No. 22-55480

---

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

HOWARD ITEN,

Plaintiff – Appellant,

v.

COUNTY OF LOS ANGELES,

Defendant – Appellee.

---

On Appeal from the United States District Court
for the Central District of California
Honorable Dean D. Pregerson, District Judge

---

**APPELLANT'S OPENING BRIEF**

---

LAWRENCE G. SALZMAN
DAMIEN M. SCHIFF
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
LSalzman@pacificlegal.org
DSchiff@pacificlegal.org

KATHRYN D. VALOIS
Pacific Legal Foundation
4440 PGA Blvd., Suite 307
Palm Beach Gardens, Florida 33410
Telephone: (561) 691-5000
KValois@pacificlegal.org

*Attorneys for Plaintiff – Appellant Howard Iten*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF ISSUES ..................................................................... 1

INTRODUCTION ................................................................................... 2

STATEMENT OF THE CASE ................................................................ 5

STANDARD OF REVIEW ..................................................................... 10

SUMMARY OF ARGUMENT ............................................................... 11

ARGUMENT .......................................................................................... 14

I.    Iten Is Injured by the Eviction Moratorium and Pled
      Sufficient Facts To Establish Standing ........................................... 14

    A.  A tenant's genuine mistake of law is a plausible extenuating
        circumstance qualifying a tenant for the moratorium's protections .......... 17

    B.  The district court's landlord-friendly interpretation of the
        "extenuating circumstances" provision is contrary to the
        moratorium's purpose ........................................................... 21

    C.  The district court should have afforded Iten an opportunity
        to pursue jurisdictional discovery, and in no event should
        have dismissed with prejudice ................................................ 25

II.    Iten Adequately Pled a Claim for Relief under the Contracts Clause ........... 27

    A.  The Contracts Clause ............................................................ 27

    B.  The County's moratorium substantially impairs the contract
        rights of commercial landlords .............................................. 28

    C.  The County's moratorium is not reasonably related to fighting
        the pandemic and is not tempered by reasonable conditions
        protecting the basic contractual interests of commercial landlords ......... 30

    D.  *Jacobson* deference is irrelevant to this action ......................... 35

i

CONCLUSION ...................................................................................39

STATEMENT OF RELATED CASES .................................................40

CERTIFICATE OF COMPLIANCE ....................................................41

# TABLE OF AUTHORITIES

## Cases

*Agudath Israel of America v. Cuomo,*
    983 F.3d 620 (2d Cir. 2020) ............................................................38

*Allied Structural Steel Co. v. Spannaus,*
    438 U.S. 234 (1978)....................................................28, 31, 36

*Almond All. of Cal. v. Fish & Game Comm'n,*
    294 Cal. Rptr. 3d 603 (2022) ...............................................23

*Apartment Ass'n of Greater Los Angeles v. City of Los Angeles,*
    No. 21-55623, 2022 WL 3369526 (9th Cir. Aug. 16, 2022)............................26

*Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles,*
    10 F.4th 905 (9th Cir. 2021) ............................................29, 31, 35, 37

*Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles,*
    500 F. Supp. 3d 1088 (C.D. Cal. 2020) ....................................... 29-30

*Armour v. City of Indianapolis,*
    566 U.S. 673 (2012)........................................................37

*Babbitt v. United Farm Workers Nat'l Union,*
    442 U.S. 289 (1979)........................................................24

*Baptiste v. Kennealy,*
    490 F. Supp. 3d 353 (D. Mass. 2020)........................................ 29-30

*Board of License Comm'rs of Town of Tiverton v. Pastore,*
    469 U.S. 238 (1985)........................................................21

*Boschetto v. Hansing,*
    539 F.3d 1011 (9th Cir. 2008) ...............................................25

*Boshernitsan v. Bach,*
    276 Cal. Rptr. 3d 109 (2021) ...............................................22

*California Pro-Life Council, Inc. v. Getman,*
    328 F.3d 1088 (9th Cir. 2003) ...............................................11

*CFPB v. Gordon*,
   819 F.3d 1179 (9th Cir. 2016) ............................................................10

*Community Youth Athletic Ctr. v. City of National City*,
   164 Cal. Rptr. 3d 644 (2013) ...................................................... 18-19

*Craik v. County of Santa Cruz*,
   96 Cal. Rptr. 2d 538 (2000) ...............................................................21

*East Bay Sanctuary Covenant v. Biden*,
   993 F.3d 640 (9th Cir. 2021) ..............................................................26

*Energy Reserves Group, Inc. v. Kan. Power & Light Co.*,
   459 U.S. 400 (1983)............................................................28, 31, 33

*Fleming v. Charles Schwab Corp.*,
   878 F.3d 1146 (9th Cir. 2017) ............................................................27

*Garcia v. Hejmadi*,
   68 Cal. Rptr. 2d 228 (1997) ...............................................................19

*Heights Apartments, LLC v. Walz*,
   30 F.4th 720 (8th Cir. 2022) ................................................ 29, 38-39

*Home Building & Loan Association v. Blaisdell*,
   290 U.S. 398 (1934)........................................................ 13, 34, 36-37

*Jacobson v. Massachusetts*,
   197 U.S. 11 (1905)............................................................... 14, 35-36

*Lazar v. Kroncke*,
   862 F.3d 1186 (9th Cir. 2017) ............................................................27

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)............................................................................16

*McCormick v. Bd. of Supervisors*,
   243 Cal. Rptr. 617 (1988) ..................................................................18

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007)............................................................................24

iv

*Melendez v. City of New York,*
  16 F.4th 992 (2d Cir. 2021) .......................................................27-28, 30, 33-35

*Mendez v. Small,*
  298 F.3d 1154 (9th Cir. 2002) ...........................................................17

*Minick v. City of Petaluma,*
  207 Cal. Rptr. 3d 350 (2016) .............................................................20

*Munden v. Stewart Title Guaranty Co.,*
  8 F.4th 1040 (9th Cir. 2021) .............................................................11

*Pagarigan v. Aetna U.S. Healthcare of Cal., Inc.,*
  69 Cal. Rptr. 3d 627 (2007) .............................................................23

*Parkmerced Co. v. San Francisco Rent Stabilization & Arbitration Bd.,*
  263 Cal. Rptr. 617 (1989) ...............................................................22

*People v. Johnson,*
  264 Cal. Rptr. 3d 103 (2020) ...........................................................17

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
  141 S. Ct. 63 (2020).................................................................. 37-38

*Singleton v. Wulff,*
  428 U.S. 106 (1976).....................................................................11

*Skidgel v. Cal. Unemployment Ins. Appeals Bd.,*
  493 P.3d 196 (Cal. 2021) ............................................................ 21-22

*Skyline Wesleyan Church v. California Dep't of Managed Health Care,*
  968 F.3d 738 (9th Cir. 2020) ........................................................ 10-11

*Solv-All v. Superior Court,*
  32 Cal. Rptr. 3d 202 (2005) .............................................................19

*South Bay United Pentecostal Church v. Newsom,*
  140 S. Ct. 1613 (2020)...................................................................38

*Southcentral Found. v. Alaska Native Tribal Health Consortium,*
  983 F.3d 411 (9th Cir. 2020) ............................................................10

v

*State Farm Fire & Cas. Co. v. Pietak*,
    109 Cal. Rptr. 2d 256 (2001) ..................................................................18

*Sveen v. Melin*,
    138 S. Ct. 1815 (2018) ....................................................................28, 31

*Telesaurus VPC, LLC v. Power*,
    623 F.3d 998 (9th Cir. 2010) ...............................................................27

*U.S. Trust Co. of New York v. New Jersey*,
    431 U.S. 1 (1977)...........................................................................28, 36

*W.B. Worthen Co. ex rel. Bd. of Comm'rs of Street Imp.*
    *Dist. No. 513 of Little Rock v. Kavanaugh*,
    295 U.S. 56 (1935).........................................................................34, 36

*Wolfe v. Strankman*,
    392 F.3d 358 (9th Cir. 2004) ..........................................................10, 25

*Zamora v. Clayborn Contracting Group, Inc.*,
    47 P.3d 1056 (Cal. 2002).......................................................................24

## United States Constitution

U.S. Const. art. I, § 10, cl. 1....................................................................1, 3

## Statutes

28 U.S.C. § 1291 .........................................................................................1

28 U.S.C. § 1331 .........................................................................................1

Cal. Code Civ. Proc. § 1161 .....................................................................15

Cal. Code Civ. Proc. §§ 1179.01-1179.07 ...............................................19

## Rule

Fed. R. App. P. 4(a)(1)(A) ..........................................................................1

## Other Authorities

85 Fed. Reg. 55,292 (Sept. 4, 2020) ..........................................................19

Asian Pac. Am. Legal Ctr., *L.A. Speaks: Language Diversity and English Proficiency*, http://yarnpolitik.org/website/wp-content/uploads/2014/06/la-speaks-final-031908.pdf (last visited Sept. 19, 2022) ...............................................................20

Black's Law Dictionary (11th ed. 2019) ......................................... 17-18

Cal. Judicial Council, Emergency Rules, https://www.courts.ca.gov/documents/appendix-i.pdf ......................................19

Cimini, Kate, *Small California landlords left struggling when renters stop paying*, Cal Matters (Mar. 17, 2021), https://calmatters.org/california-divide/2021/03/small-landlords-left-struggling-when-renters-stop-paying/ .................................................... 33-34

Hall, Matthew, *$65,000 settlement in local tenant harassment case*, Santa Monica Daily Press (July 21, 2022), https://bit.ly/3BkmeEG.................15

L.A. County Consumer & Business Affairs, About L.A. County's COVID-19 Tenant Protections Resolution, https://dcba.lacounty.gov/noevictions/ (last visited Sept. 19, 2022)....................6

Reyes, Emily Alpert, *Proposed L.A. law banning landlords from harassing renters clears a key hurdle*, Los Angeles Times (Apr. 14, 2021), https://lat.ms/3DsjlEi......................... 15-16

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction over this action under 28 U.S.C. § 1331. The district court's order granting with prejudice Defendant-Appellee Los Angeles County's Motion to Dismiss the First Amended Complaint (FAC) is a final decision over which this Court has appellate jurisdiction. *See* 28 U.S.C. § 1291. The district court's order was entered on April 15, 2022. Plaintiff-Appellant Howard Iten filed a notice of appeal on May 12, 2022. *See* ER 124. The appeal is timely under Federal Rule of Appellate Procedure 4(a)(1)(A).

## STATEMENT OF ISSUES

The issues on appeal are:

1. Whether Iten has standing to challenge the constitutionality of the County's commercial eviction moratorium.

2. If so, whether an eviction moratorium that prohibits landlords from evicting commercial tenants for nonpayment of rent or recovering late fees or interest, that denies landlords any stream of income during the moratorium period, and that establishes a year-long period following expiration of the eviction moratorium for tenants to pay back rent, violates the Constitution's Contracts Clause, U.S. Const. art. I, § 10, cl. 1.

## INTRODUCTION

Appellant Howard Iten brought this action to challenge the constitutionality of Appellee Los Angeles County's "Resolution of the Board of Supervisors of the County of Los Angeles Further Amending and Restating the Executive Order for an Eviction Moratorium During Existence of a Local Health Emergency Regarding Novel Coronavirus (COVID-19)" (moratorium). ER 91-108 (Moratorium ¶¶ I.-XXVI.). From March 2020 through January 2022, the moratorium prohibited commercial landlords from evicting their nonpaying tenants through unlawful detainer actions, while the moratorium currently imposes a one-year forbearance period for the collection of overdue rent from tenants like Iten's, and permanently prohibits the collection of late fees and interest for overdue moratorium-era rent. *See* ER 48-55 (Moratorium Amend. ¶¶ V., VII.), 98-103 (Moratorium ¶¶ V., VII.). The moratorium's protections are triggered when "the Tenant demonstrates an inability to pay rent . . . due to Financial Impacts [r]elated to COVID-19," so long as "the Tenant has provided notice to the Landlord within seven (7) days after the date that rent and/or such related charges were due, unless extenuating circumstances exist, that the Tenant is unable to pay." *See* ER 48 (Moratorium Amend. ¶ V.A.1.), 99 (Moratorium ¶ V.A.1.). Iten contends that the moratorium abrogated the lease contract between himself and his tenant, in violation of the Constitution's Contracts

Clause, U.S. Const. art. I, § 10, cl. 1. ER 72-77 (FAC ¶¶ 33-48), 117-122 (Compl. ¶¶ 32-46).

Iten leased his commercial auto-repair property, his principal source of retirement income, to a tenant who refused to pay rent for many months. ER 69-70 (FAC ¶¶ 21-23), 115-116 (Compl. ¶¶ 21-23). The tenant claimed protection of the moratorium with a notice to Iten that he was "very adversely [a]ffected by Covid 19 and . . . will not be able to pay the rent." ER 70 (FAC ¶ 23), 115-116 (Compl. ¶ 23). When pressed by Iten's property management company some months later to justify or reaffirm his eligibility for protection under the moratorium, the tenant again repeated that he would not be able to pay rent, insisted that the moratorium provided him relief, and stated that he was facing "extenuating circumstances" along with his belief that monthly notices of his continuing hardship were not required under the law. ER 71 (FAC ¶ 30).

The County's moratorium imposes penalties of up to $5,000 per day, and punishment as a misdemeanor, on landlords who "harass" tenants by among other things attempting to evict those who are protected by the moratorium. ER 55-58 (Moratorium Amend. ¶¶ VIII.-X.), 103-105 (Moratorium ¶ VIII.). The moratorium thus left Iten without recourse to recover the substantial monies owed him and regain possession of his property, while placing him at credible risk of prosecution if his

3

tenant or local authorities pursued a complaint of harassment for his attempting to do so.

Nonetheless, the district court dismissed Iten's Amended and Supplemental Complaint (FAC) for lack of jurisdiction, declining to decide the merits of the Contracts Clause claim, on the ground that Iten does not have standing. ER 4-12 (Order Amend.). The court held that Iten's tenant's failure to provide monthly notice of a continuing COVID hardship deprived the tenant of the moratorium's protections, notwithstanding the tenant's own contrary assertion. ER 7-12 (Order Amend.). It further held that the tenant's expression of extenuating circumstances was not effective to trigger the "extenuating circumstances" provision of the moratorium excusing the failure to make monthly notices, ER 7-12 (Order Amend.), despite the fact that the County did not contest the sufficiency of the tenant's "extenuating circumstances" as alleged in the FAC. ER 38-39 (Amend. Motion to Dismiss (Amend. MTD)). Thus, the district court concluded that, because "the Moratorium does not prevent Plaintiff from evicting his tenant," none of Iten's injuries are traceable to the County. ER 7-8 (Order Amend.).

The decision below should be reversed. Iten's FAC adequately alleges an Article III injury and standing to challenge the moratorium. Moreover, the Court should, in the interest of judicial economy, reach the merits of the County's motion to dismiss the FAC for failure to state a claim, which does not turn on disputed

factual issues and which was fully briefed below. Iten's FAC adequately alleges, as a matter of law, that the moratorium's interference with Iten's lease contract was substantial and neither reasonably related to the moratorium's purported pandemic-related purposes nor tempered by reasonable conditions to safeguard landlords' rights.

## STATEMENT OF THE CASE

*The Commercial Eviction Moratorium and Its Context*

In March 2020, the County of Los Angeles declared a state of emergency from the Coronavirus pandemic. ER 91 (Moratorium). That month it imposed a moratorium on residential and commercial tenant evictions for nonpayment of rent related to COVID hardship. ER 91 (Moratorium). Over the next two years, the County renewed and extended its moratorium resolution many times. *See* ER 42-44. As relevant to the injuries alleged in the FAC, the moratorium:

- Halts the eviction of commercial tenants for nonpayment of rent or late fees due to COVID hardship. Tenants with fewer than 10 employees, like Iten's tenant, may self-certify their inability to pay by providing "notice to the Landlord within seven (7) days after the date that rent and/or such related charges were due, unless extenuating circumstances exist, that the Tenant is unable to pay"; ER 48-54 (Moratorium Amend. ¶¶ V.A.1.-V.B.2.a.).

- Permanently prohibits the collection of late fees and interest for overdue moratorium-period rent; ER 48, 55 (Moratorium Amend. ¶¶ V.A.1., VII.).

- Provides tenants like Iten's a year-long forbearance period after the lifting of the prohibition on evictions to pay overdue rents; ER 54 (Moratorium Amend. ¶ V.C.2.a.).

- Prohibits the "harassment" of tenants, which includes attempting to evict tenants who are protected by the moratorium; ER 55-57 (Moratorium Amend. ¶ VIII.).

- Establishes criminal (misdemeanor) and civil penalties of up to $5,000 a day for landlords who violate the moratorium. ER[1] 57-58 (Moratorium Amend. ¶¶ IX.-X.).

ER 48-58 (Moratorium Amend. ¶¶ V.A.1.-X.).

*Appellant and His Injury*

Iten is a retired auto mechanic. ER 65-66, 69 (FAC ¶¶ 8, 22), 111-112, 115 (Compl. ¶¶ 8, 22). For several decades, he ran a successful auto repair shop on a commercially zoned parcel located in Los Angeles County. ER 69 (FAC ¶ 22), 115 (Compl. ¶ 22). Following his retirement, he leased the property as his principal

---

[1] Although the pause on commercial evictions expired at the end of January 2022, many other provisions of the moratorium remain in place, including the forbearance period and the prohibition on late fees and interest. *See* L.A. County Consumer & Business Affairs, About L.A. County's COVID-19 Tenant Protections Resolution, https://dcba.lacounty.gov/noevictions/ (last visited Sept. 19, 2022).

source of livelihood—most recently to the tenant at issue in this action, who held himself out as a franchisee of a nationwide auto repair company. ER 69 (FAC ¶ 22), 115 (Compl. ¶ 22).

In April 2020, the tenant notified Iten's property management company that he was "very adversely [a]ffected by Covid 19" and therefore would not pay rent. ER. 70 (FAC ¶ 23), 115-116 (Compl. ¶ 23). Between April and August of that year, the tenant paid nothing. ER 70 (FAC ¶ 23), 115-116 (Compl. ¶ 23). With the lease set to expire in August 2020, Iten negotiated a new five-year lease with the tenant that included a promise to pay the back rent on a reasonable schedule as well as future rent. ER 70-71 (FAC ¶¶ 24-27), 116 (Compl. ¶¶ 24-27). Iten hoped that the ongoing relationship might lead to his being made whole in time. ER. 70 (FAC ¶ 24), 116 (Compl. ¶ 24). Unfortunately, the tenant failed to fully satisfy his payment obligations under the new lease, leaving a significant financial deficit. ER 71 (FAC ¶ 28), 116 (Compl. ¶ 28). Prior to the moratorium, Iten's lease with his tenant left him free to evict his tenant at any time, and he would have done so long ago. ER 71-72 (FAC ¶¶ 27, 32), 116-117 (Compl. ¶¶ 27, 31). Due to the moratorium, however, Iten was prohibited from either evicting or seeking payment from the tenant; he also stood to risk significant civil and even criminal liability by seeking to test his tenant's entitlement to the moratorium's protections through an unlawful detainer action. ER 57-58 (Moratorium Amend. ¶¶ IX.-X.), 71-72 (FAC ¶ 31), 117 (Compl. ¶ 30).

*Procedural History*

In January 2021, Iten commenced this Section 1983 action in the Central District of California, challenging the moratorium as a violation of the federal Contracts Clause, and seeking declaratory relief and damages. ER 109-123 (Compl.). The County moved to dismiss, arguing among other things that the tenant's failure to provide monthly notice of his inability to pay for a COVID-related hardship, and his failure to articulate extenuating circumstances excusing him from those notices, excluded the tenant from the moratorium's coverage. ER 87-90 (County's MTD). The district court agreed and dismissed Iten's initial complaint for lack of standing but also granted leave to amend.[2] ER 79-86 (Order).

Hoping to secure an adjudication of his constitutional claim, Iten proceeded to bear the risk that his tenant might claim "harassment" by pressing the tenant to further justify his protection under the moratorium, inquiring as to whether extenuating circumstances existed to excuse the tenant from making the required monthly notices. ER 71 (FAC ¶ 30). The tenant responded simply that such extenuating circumstances did exist; that he continued to experience COVID-related hardship and could not pay; and that, according to his understanding, the moratorium protected him and that renewed monthly notices were not required. ER 71 (FAC

---

[2] The district court did, however, reject the County's argument that Iten had not adequately alleged that his tenant's inability to pay was for a valid COVID-related reason. ER 84.

¶ 30). Iten again deemed it untenable to pursue eviction or repayment more vigorously at the risk of being charged with harassment under the moratorium. Instead, with this new information from his tenant, Iten filed the FAC underlying this appeal. ER 63-78 (FAC).

The County again moved to dismiss the complaint. ER 38-39 (Amend. MTD). Notably, it did not argue this time that Iten lacked standing or that the moratorium did not apply to the tenant. ER 39 (Amend. MTD). Instead, it moved to dismiss for failure to state a plausible Contracts Clause claim. ER 39 (Amend. MTD). Consequently, the briefing on the second motion to dismiss contained no discussion of standing, but instead focused on the merits of Iten's lawsuit. ER 39 (Amend. MTD).

At the hearing, counsel for the County spoke first, detailing why the County's moratorium did not violate the Contracts Clause, and without mentioning standing. ER 13-15 (Transcript). Not until the County ended its presentation was standing raised, by the district court *sua sponte*. ER 13-19 (Transcript). Ultimately, the district court ruled that the FAC failed to adequately allege standing and dismissed the case on that basis, holding that the tenant's assertions did not qualify for the moratorium's "extenuating circumstances" exception and therefore that the tenant's failure to provide monthly notice would not be excused. ER 4-12 (Order Amend.). In reaching that conclusion, the district court did not cite any state authorities to support its

9

interpretation of "extenuating circumstances," and gave no weight to the County's decision not to contest the sufficiency of Iten's standing allegations in the FAC. ER 7-12 (Order Amend.). This timely appeal followed.[3] ER 124 (Notice of Appeal).

## STANDARD OF REVIEW

An appeal from dismissal for lack of standing is reviewed de novo. *Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411, 416-17 (9th Cir. 2020). Where, as here, jurisdiction is challenged by means of a facial attack on the sufficiency of the pleading's allegations, a court must assume those allegations to be true and must draw all reasonable inferences therefrom in the plaintiff's favor. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Although the district court did not rule on the County's motion to dismiss for failure to state a claim, this Court may do so. *See CFPB v. Gordon*, 819 F.3d 1179, 1191 n.5 (9th Cir. 2016) (appellate courts "may address this issue even though the district court refused to resolve it" so long as it was "raised sufficiently for the trial court to rule on it") (citation omitted). Such an exercise of appellate discretion is particularly appropriate where "the issue presented is purely one of law . . . or the pertinent record has been fully developed." *Skyline Wesleyan Church v. California*

---

[3] The district court did not rule on the County's request for judicial notice. *Cf.* ER 129 (ECF No. 34). Following the expiration of the eviction moratorium, and the tenant's continued failure to satisfy his lease obligations, Iten brought an unlawful detainer action in California Superior Court. The case remains pending.

*Dep't of Managed Health Care*, 968 F.3d 738, 749 n.7 (9th Cir. 2020) (citation omitted). *Accord California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1096 n.5 (9th Cir. 2003); *Munden v. Stewart Title Guaranty Co.*, 8 F.4th 1040, 1049 (9th Cir. 2021); *see also Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals . . . . Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt[.]").

## SUMMARY OF ARGUMENT

Iten has standing to challenge the County's moratorium, and his FAC states a valid claim for relief under the Contracts Clause.

I.A. Contrary to the district court's ruling, Iten has standing to pursue his Contracts Clause claim because his FAC adequately alleges that the County's moratorium abrogated Iten's lease contract rights and remedies. ER 71-72 (FAC ¶¶ 31-32). The causal connection between the County's moratorium and Iten's injuries-in-fact turns upon the availability to Iten's tenant of the extenuating circumstances exception to the moratorium's monthly notice requirement. The moratorium contains no definition of "extenuating circumstances," ER 45-48 (Moratorium Amend. ¶ III., ¶ V.A.1.), so it is appropriate to look to general principles of California law to construe that phrase. According to those principles,

Iten's tenant should qualify for an excuse from the moratorium's monthly notice requirement because his failure to satisfy that requirement resulted from a reasonable mistake of law. That conclusion is supported by the County's own litigation conduct: the County declined to reassert its standing objection against the FAC, ER 39 (Amend. MTD), thereby impliedly signaling its view that Iten's tenant's successful reliance on the extenuating circumstances exception was likely.

B. The district court's contrary conclusion was based principally on its view that a "mistake of law" interpretation of extenuating circumstances would render the moratorium's notice requirement surplusage. ER 7-12 (Order Amend.). But the district court failed to acknowledge how indulgent the mistake of law excuse is under California law, or that, also under California law, the canon against surplusage can be overcome where, as here, the legislative intent is clear to err as much as possible on the side of tenants.

C. To the extent that the meaning of extenuating circumstances presents a mixed question of law and fact, the district court should have afforded, under the unique circumstances of this case, an opportunity for Iten to pursue jurisdictional discovery to ascertain how in practice the extenuating circumstances exception has been applied. And even if the district court's standing dismissal was correct, its dismissal with prejudice was erroneous.

II.A. Iten's complaint competently pleads a claim for relief under the Contracts Clause. ER 63-78 (FAC). The moratorium abrogates critical rights and remedies that Iten would otherwise enjoy under his lease contract, such as the right to evict upon nonpayment of rent, the right to immediately demand payment of back-rent, and the right to charge late fees and interest. ER 48-55 (Moratorium Amend. ¶¶ V., VII.). These impingements, which a reasonable landlord could not have anticipated, are substantial because they go to the heart of the lease contract: the ability to obtain a reliable, monthly stream of income from one's tenant or to replace a defaulting tenant.

B. The contractual impingements that the moratorium imposes are not reasonably related to any legitimate government interest, or softened by reasonable conditions. Keeping commercial tenants "housed" has little effect on stopping the spread of COVID-19. Moreover, even assuming that widespread abrogation of lease contract rights could be justified as part of a government effort to remedy the economic harm caused by the government's own measures to directly combat COVID-19, the moratorium is not reasonably related to that goal. Moreover, unlike the analogous moratorium upheld in *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398 (1934), the County's moratorium provides landlords with no right to any income stream during the eviction moratorium period.

13

C. The moratorium cannot be saved by reliance upon heightened deference under *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). That substantive due process case predates the modern tiers of scrutiny analysis, and has been supplanted by the reasonable relationship standard of review that the Supreme Court has established for testing Contracts Clause claims. To the extent that *Jacobson* had any relevance to the COVID-19 pandemic, such relevance abated once the initial stages of the pandemic had passed.

## ARGUMENT

### I.    Iten Is Injured by the Eviction Moratorium and Pled Sufficient Facts To Establish Standing

Iten's tenant failed to pay rent as required by his lease, claiming protection of the eviction moratorium during COVID because "times are tough." ER 70-71 (FAC ¶¶ 23, 29). Iten pled that, "[b]ut for the [County's] eviction moratorium," he "would immediately initiate eviction proceedings to gain possession of his property and seek other remedies available to collect rent and other amounts due from his Tenant." ER 72 (FAC ¶ 32). His lease authorizes him "to terminate the Tenant's right to possession by any lawful means for, among other reasons, failure of the Tenant to satisfy in a timely fashion the monetary obligations imposed by the lease." ER 71 (FAC ¶ 27).

Prior to the County's enactment of the moratorium, Iten was free under state law and his lease to bring an unlawful detainer action to regain possession when a

tenant "continues in possession . . . of the property . . . after default in the payment of rent," among other causes. *See* Cal. Code Civ. Proc. § 1161; ER 66-68 (FAC ¶¶ 11-17). The moratorium abrogated these lease terms for protected tenants, while also imposing on Iten and other landlords the risk of significant civil and even criminal liability for attempting to evict a tenant protected by the moratorium. ER 56 (Moratorium Amend. ¶ VIII.I.) (defining tenant harassment as including legal action "to recover possession of a rental unit based upon facts which the Landlord has no reasonable cause to believe to be true or upon a legal theory which is untenable under the facts known the Landlord"). Iten thus has been injured by the moratorium for the commonsense reason that it prohibited him from enforcing the terms of his lease to regain his property and recover monies owed to him while simultaneously threatening him with severe criminal and civil penalties should he attempt to do so. ER 48-58 (Moratorium Amend. ¶¶ V., VIII.-X.).

Put another way, the moratorium—backed by its credible threat of prosecution and severe penalties for violating it[4]—is the reason why Iten did not pursue eviction

---

[4] Recent history confirms that local governments and tenant organizations are eager to police alleged instances of landlord harassment. *See* Matthew Hall, *$65,000 settlement in local tenant harassment case*, Santa Monica Daily Press (July 21, 2022) (describing a tenant harassment lawsuit by the City of Santa Monica against a landlord, resulting in a $65,000 judgment against the landlord), https://bit.ly/3BkmeEG; Emily Alpert Reyes, *Proposed L.A. law banning landlords from harassing renters clears a key hurdle*, Los Angeles Times (Apr. 14, 2021) (discussing tenant harassment provisions and unhappy tenants who either had

to regain possession of his property and enforcement of other lease terms. Iten was faced with a tenant who claimed protection under the moratorium; the tenant acted consistent with that claim; and, when pressed to justify his claim, the tenant reaffirmed his view that he was protected by the moratorium and not required, due to extenuating circumstances, to provide monthly notice of his continuing hardship. ER 71 (FAC ¶ 30). In light of the tenant's invocation of the moratorium, Iten reasonably chose to refrain from challenging his tenant and instead chose to seek redress from the County for the harms caused by its moratorium.

The district court rebuffed Iten's efforts, dismissing his action for lack of standing because, in the district court's view, Iten's tenant's "bare-bones assertion" of extenuating circumstances excusing him from monthly notices did "not support the inference that such circumstances exist." ER 10 (Order Amend.). To establish standing at the pleading stage, Iten had to allege a concrete and particularized injury-in-fact that is fairly traceable to the County's moratorium and that can be judicially redressed. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Contrary to the district court's conclusion, Iten's FAC does just that. As set forth below, Iten's various economic injuries are directly traceable to the County's moratorium and its abrogation of Iten's contract rights, because Iten's tenant is likely protected by the

---

already brought suit under the provisions or were planning to bring suit in the future), https://lat.ms/3DsjlEi.

moratorium. And because these injuries may be remedied by an award of actual damages, Iten has standing to pursue his Contracts Clause claim against the County.

### A. A tenant's genuine mistake of law is a plausible extenuating circumstance qualifying a tenant for the moratorium's protections

The moratorium demands that tenants "provide[] notice to the Landlord within seven (7) days after the date that rent [is] due" of their inability to pay due to COVID-19 hardship, "unless extenuating circumstances exist." ER 48 (Moratorium Amend. ¶ V.A.1.). Iten's tenant failed to provide those notices but, when Iten asked the tenant to justify the failure, he responded that "my understanding [is] that such notice [was previously given] and is not on [a] month to month basis," while also asserting a claim to the moratorium's protection. ER 71 (FAC ¶ 30). That statement may evidence a mistake of law on Iten's tenant's part. But, contrary to the district court's conclusion, such a mistake does not obviate Iten's injury.

The term "extenuating circumstances" is not defined by the moratorium. ER 45-48 (Moratorium Amend. ¶¶ III., V.A.1.). Under California law,[5] courts in such circumstances typically look first to the term's plain meaning, which can sometimes be supplied by dictionaries. *People v. Johnson*, 264 Cal. Rptr. 3d 103, 114 (2020). Black's Law Dictionary (11th ed. 2019) equates "extenuating circumstance" with

---

[5] Because the interpretation of the County's moratorium is a question of state municipal law, this Court must look to state law interpretive principles. *See Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) ("A state court has the last word on the interpretation of state law.").

"mitigating circumstance," which in turn is defined in pertinent part as an "unusual or unpredictable event that prevents performance." Although this definition is not perfectly apposite to how the phrase is used in the moratorium, it is consistent with the interpretation advanced by Iten, for surely the COVID-19 pandemic and the unprecedented legislative measures in response thereto, such as the moratorium, represent an unusual occurrence that would excuse less than strict compliance with those measures.

Such a reading is also consistent with how California law in other contexts treats mistakes of law. For example, "[a]n honest mistake of law is a valid ground for relief [from a default judgment under California Code of Civil Procedure section 473] when the legal problem posed 'is complex and debatable.'" *State Farm Fire & Cas. Co. v. Pietak*, 109 Cal. Rptr. 2d 256, 263 (2001) (quoting *McCormick v. Bd. of Supervisors*, 243 Cal. Rptr. 617, 621 (1988)). Whether such a mistake is excusable depends in part on "the reasonableness of the misconception and . . . the justifiability of the failure to determine the correct law." *McCormick*, 243 Cal. Rptr. at 621. It is quite plausible that a California court would find that Iten's tenant's mistake— essentially a type of due-date error—was excusable. *See Community Youth Athletic Ctr. v. City of National City*, 164 Cal. Rptr. 3d 644, 691-92 (2013) (mistaking a general default 60-day deadline for the correct and more specific 30-day deadline held to be excusable error, despite the 60-day deadline being explicitly limited "as

otherwise provided by statute"). *Cf. Solv-All v. Superior Court*, 32 Cal. Rptr. 3d 202, 207 (2005) (Section 473's authorization for relief from "mistake, inadvertence, surprise, or neglect" must "be broadly defined" so as "effectuate the law's purpose") (cleaned up). The County's moratorium was in place just a few months prior to Iten's new lease with the tenant, and thus there was no longstanding practice or guidance for landlords or tenants to follow to explain its provisions. At the same time, there were a number of overlapping residential and commercial eviction moratoriums with different protections and different requirements; these moratoriums came not only from other jurisdictions within the County, *see, e.g.*, ER 69 (FAC ¶ 20) (the moratorium from the City of Lawndale, where Iten's property is located), but also from the state, *see* Cal. Judicial Council, Emergency Rule 1;[6] COVID-19 Tenant Relief Act, Cal. Code Civ. Proc. §§ 1179.01-1179.07, as well as the federal government, 85 Fed. Reg. 55,292 (Sept. 4, 2020). Given this legal fog, it would be extraordinary to expect an average citizen to know with precision the meaning of every relevant COVID measure. *Cf. Garcia v. Hejmadi*, 68 Cal. Rptr. 2d 228, 233 (1997) (whether a mistake is excusable under Section 473 depends on whether "a reasonably prudent person under the same or similar circumstances" would have made the same error) (citation omitted). That is especially so with respect to

---

[6] *Available at* https://www.courts.ca.gov/documents/appendix-i.pdf.

19

provisions, like the moratorium's monthly notice requirement, that apply not just to commercial tenants but also to the County's residential tenants, many of whom are not legally sophisticated and who understand English only as a second language. *Cf.* Asian Pac. Am. Legal Ctr., *L.A. Speaks: Language Diversity and English Proficiency* 3 (a majority of the County's residents speak a language other than English at home).[7] In other words, the fact that many of the persons whom the moratorium was designed to help might have significant difficulty in fully understanding the moratorium's requirements would explain why the County would want to moderate the strictness of the notice requirement with the extenuating circumstances exception, which Iten's tenant plausibly invoked. *Cf. Minick v. City of Petaluma*, 207 Cal. Rptr. 3d 350, 360-61 (2016) (a temporary cognitive impairment of counsel warrants relief from summary judgment).

That the County intended the extenuating circumstances exception to be understood broadly to include tenants like Iten's is also supported by the County's litigation conduct in this very case. As noted above, the County objected to Iten's initial complaint in part on standing, but pointedly did not reassert that objection against the FAC, with its new allegations of the tenant's explanation for why extenuating circumstances exist. ER 39 (Amend. MTD), 88-90 (County's MTD).

---

[7] *Available at* http://yarnpolitik.org/website/wp-content/uploads/2014/06/la-speaks-final-031908.pdf (last visited Sept. 19, 2022).

Presumably the County would have reasserted that jurisdictional objection if it had thought it meritorious. *Cf. Board of License Comm'rs of Town of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985) (noting that "counsel . . . have a continuing duty to inform the Court of any development which may conceivably affect the outcome of the litigation") (internal quotation marks and citation omitted). Thus, the County's refusal to do so is important evidence as to the County's own views as to the scope of extenuating circumstances. And those views carry much more weight than an ordinary litigant's concession. As the author of the moratorium, the County is in a unique and privileged position to know what the moratorium means. *See Craik v. County of Santa Cruz*, 96 Cal. Rptr. 2d 538, 545 (2000) ("Again, we defer to defendant's construction of its own ordinance."). These considerations further support the plausibility of Iten's tenant's invocation of extenuating circumstances, and thus his protection under the moratorium.

**B. The district court's landlord-friendly interpretation of the "extenuating circumstances" provision is contrary to the moratorium's purpose**

When construing legal text, California courts also look to the purpose of the relevant provision. *Skidgel v. Cal. Unemployment Ins. Appeals Bd.*, 493 P.3d 196, 202 (Cal. 2021) ("We do not, however, consider the statutory language in isolation; rather, we look to the entire substance of the statutes in order to determine their scope and purposes. That is, we construe the words in question in context, keeping in mind

the statutes' nature and obvious purposes."). Here, the County established the moratorium, among other reasons, as a pandemic measure to stop evictions that might put people out of their homes and onto the street or into conditions more likely to spread disease. ER 42-45 (Moratorium Amend.), 91-95 (Moratorium). The district court's parsimonious construction of extenuating circumstances would undercut this purpose, as it would lead to the exclusion from the moratorium's protections of those many residential and commercial tenants who, as explained in the preceding section, could mistakenly but fairly conclude that repeated monthly notices are not always necessary. Thus, the moratorium, as construed by the district court, would punish reasonably confused residential and commercial tenants alike, rendering the notice provision supreme even over the supposed purpose of keeping tenants in their properties. Such an untoward result runs contrary to the California courts' longstanding approach to the interpretation of remedial legislation, especially in the context of the landlord-tenant relationship. *See Parkmerced Co. v. San Francisco Rent Stabilization & Arbitration Bd.*, 263 Cal. Rptr. 617, 621 (1989) ("It is well settled that remedial legislation, such as the rent control ordinance at issue, must be liberally construed to effect its purposes."); *Boshernitsan v. Bach*, 276 Cal. Rptr. 3d 109, 115 (2021) ("We liberally construe remedial legislation, such as the Rent Ordinance, to effectuate its purposes.").

22

Although the district court acknowledged that the moratorium was designed to help tenants and not landlords, it nevertheless rejected a generous construction of extenuating circumstances because such would make the notice requirement inoperative. ER 11 (Order Amend.). The court was mistaken. As the preceding section explains, not all mistakes of law are excusable under general principles of California law; indeed, unreasonable mistakes are by definition entitled to no relief. *See Pagarigan v. Aetna U.S. Healthcare of Cal., Inc.*, 69 Cal. Rptr. 3d 627, 631 (2007). Thus, Iten's understanding of the extenuating circumstances exception would not render the moratorium's notice requirement entirely inoperative. Moreover, even if a broad construction of extenuating circumstances were to result in the idling of the notice provision, that fact alone would not automatically merit the rejection of such an interpretation. The rule against surplusage "is merely a guide for ascertaining legislative intent, it is not a command." *Almond All. of Cal. v. Fish & Game Comm'n*, 294 Cal. Rptr. 3d 603, 617 (2022) (cleaned up). Its presumption can be overcome whenever compelled by legislative intent. *Id*. Here, the obvious intent of the moratorium is to protect tenants from eviction—an intent underscored by the moratorium's severe punishment for landlords who try and fail through litigation to test their tenants' entitlement to the moratorium's protections. ER 56-58 (Moratorium Amend.), 104-107 (Moratorium). This clear legislative purpose also supports a broad understanding of extenuating circumstances, consistent with

23

general principles of California law, to excuse such reasonable mistakes of law as those committed by Iten's tenant. *Cf. Zamora v. Clayborn Contracting Group, Inc.*, 47 P.3d 1056, 1062 (Cal. 2002) (even "imprudent" decision-making may constitute excusable error under Section 473).

Such a reading of extenuating circumstances is also consistent with the federal law of standing, according to which litigants are not required to risk significant liability as the price for adjudication of their constitutional claims. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) ("[W]here threatened action by *government* is concerned, [courts] do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced.") (emphasis in original); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("[A]n intention to engage in a course of conduct arguably affected with a constitution interest, but proscribed by [law], and . . . a credible threat of prosecution" is an injury-in-fact under Article III). Yet that is effectively what the district court's ruling compels of Iten: sue his tenant to find out whether the tenant is in fact protected by the moratorium, even if that should risk tenant harassment. Iten, however, should not have to "bet the farm" to have his constitutional claim adjudicated in federal court. *See MedImmune, Inc.*, 549 U.S. at 129.

**C.** **The district court should have afforded Iten an opportunity to pursue jurisdictional discovery, and in no event should have dismissed with prejudice**

To the extent that the district court's dismissal amounts to a factual attack on the likelihood of Iten's tenant's ability to establish extenuating circumstances, the district court should have given Iten the opportunity to conduct limited jurisdictional discovery. *See generally Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (jurisdictional discovery may be allowed when jurisdictional facts are disputed or where a stronger showing of such facts is necessary). To begin, a factual attack on a pleading's jurisdictional sufficiency will normally only be sustained if the movant adduces some evidence controverting the pleading's allegations. *See Wolfe*, 392 F.3d at 362. But here, neither the County nor the district court offered any such evidence. Moreover, even if such an attack were otherwise proper here, it was an abuse of discretion in these circumstances for the district court not to allow Iten to adduce additional jurisdictional evidence through discovery. The County in its written papers did not challenge the sufficiency of the FAC's standing allegations, despite having done so with respect to the original complaint; and the first notice that Iten had that his tenant's articulation of extenuating circumstances as pled in the FAC might be deficient was at the hearing itself. ER 14-19 (Transcript), 39 (Amend. MTD). Thus, in these peculiar circumstances, Iten should have been afforded an opportunity to develop and adduce additional evidence as to the meaning of

25

extenuating circumstances, such as through subpoenas to the County's Department of Business and Consumer Affairs, which may have records demonstrating how often, and with what type of explanation, tenants have been able to invoke the extenuating circumstances exception.

Finally, even if the district court correctly dismissed for lack of standing, its decision to do so "with prejudice," ER 12 (Order Amend.), should be reversed, as the court's ruling did not reach the merits of Iten's Contracts Clause claim and the court made no finding that the alleged standing defect could not be cured by alleging additional facts. ER 7-12 & n.6 (Order Amend.). *See Apartment Ass'n of Greater Los Angeles v. City of Los Angeles*, No. 21-55623, 2022 WL 3369526, *1, *3 (9th Cir. Aug. 16, 2022) (mem.).

\* \* \* \* \*

Iten satisfies all of the elements of standing. He has been injured in a number of ways, including the inability for nearly a year and a half to evict his defaulting tenant, as well as his continuing inability to recover moratorium back-rent and to assess late fees and interest. ER 48-55 (Moratorium Amend. ¶¶ V., VII.), 71-72 (FAC ¶¶ 27-32). All of these limitations on his contract rights have caused distinct economic harm and thus qualify as injuries-in-fact. *See East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 664 n.5 (9th Cir. 2021). These injuries in turn are directly traceable to the County's moratorium because Iten's tenant plausibly

26

invoked the moratorium's extenuating circumstances exception to excuse any compliance failures. *See supra* Parts I.A.-B. And an award of actual damages, as prayed for in the FAC, ER 77 (FAC, Prayer for Relief ¶¶ 1-4), would redress Iten's injuries. *See Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1151 (9th Cir. 2017). The district court's standing dismissal should be reversed.

## II.    Iten Adequately Pled a Claim for Relief under the Contracts Clause[8]

### A.    The Contracts Clause

To prevail on the merits of a Contracts Clause challenge, the plaintiff bears the burden of showing that a contractual relationship exists, that a change in the law substantially impairs that contractual relationship, and that the contractual impairment is substantial. *Lazar v. Kroncke*, 862 F.3d 1186, 1199 (9th Cir. 2017). If a substantial impairment is found, courts then "assess the significance of the State's justification and the legitimacy of the public purpose behind the law" to determine whether the change in the law was "based on reasonable conditions" and was "appropriate to achieve the stated public purpose." *Id.* (citation omitted).

Inherent in a Contracts Clause analysis is a necessary balancing between private, mutually-agreed-to interests and the government's purported need to abrogate those same agreements. *Melendez v. City of New York*, 16 F.4th 992, 1032

---

[8] A motion to dismiss for failure to state a claim must be denied where the complaint alleges facts that, if true, would render the defendant liable. *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

27

(2d Cir. 2021). The first prong of the Contracts Clause test examines the extent to which a government regulation interferes with a contractual relationship. *Sveen v. Melin*, 138 S. Ct. 1815, 1821-22 (2018). In answering that question, a court considers "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Id.* at 1822. It also looks to the regulatory regime in place at the time the contract was established. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 250 (1978); *Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983). The second prong acts as a counterweight to the first, weighing the government's reasoning and justification behind creating the law. *Energy Reserves Group*, 459 U.S. at 411-12 ("If the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation such as the remedying of a broad and general social or economic problem.") (citation omitted). Finally, at the balancing stage, a court weighs the two prongs against each other and decides whether the government's reasoning justifies the abrogation of the contract.

### B. The County's moratorium substantially impairs the contract rights of commercial landlords

The County's moratorium goes to the heart of lease contracts like those between Iten and his tenant, far beyond the mere tinkering with contractual remedies. *U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 19 n.17 (1977). Indeed, the

28

moratorium was specifically designed to deprive commercial landlords of the core substance of their lease agreements: the right to a monthly stream of income in the form of rent. ER 48 (Moratorium Amend. ¶ V.A.1), 73-75 (FAC ¶¶ 39-41); *see Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*, 500 F. Supp. 3d 1088, 1096 (C.D. Cal. 2020) (landlords were likely to establish the Contracts Clause substantial impairment element because "some landlords may face, at the very least, the prospects of reduced cash flow and time value of missed rent payments"), *aff'd on other grounds*, 10 F.4th 905 (9th Cir. 2021). *Cf. Heights Apartments, LLC v. Walz*, 30 F.4th 720, 729 (8th Cir. 2022) (part of the fundamental nature of a lease, the landlord's end of the contractual bargain is receiving rent payments). This deprivation is not fleeting: the moratorium has been in place since March 2020 and, although the prohibition on evictions terminated at the end of January 2022, the moratorium's forbearance period will continue to be in effect for tenants like Iten's until at least January 31, 2023, while its prohibition on late fees and interest appears to be permanent. ER 48-55 (Moratorium Amend. ¶¶ V.A.1-V.C.2., VII.). Given the common-sense proposition that the longer a debt goes uncollected the less likely it will ever be collected, the moratorium's extended forbearance period amounts to a de facto rent waiver. *See Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 383 (D. Mass. 2020) (a residential eviction moratorium "materially undermines the contractual

bargain" in part because "landlords are unlikely to benefit from money judgments against tenants who are unable to pay rent"). *Cf.* ER 73-75 (FAC ¶¶ 39-41).

Below, the County contended that these contractual impingements do not amount to substantial impairment because lease contracts have traditionally been subject to significant government regulation. Although that may be true of residential leases, commercial leases have no comparable history of regulatory control. *See Melendez*, 16 F.4th at 1034 (finding of substantial impairment of commercial lease contracts was not defeated simply because a state "has sometimes, and to varying degrees, regulated its commercial real estate market"). And in any event, the degree to which the County's moratorium impairs lease contracts is so substantial as to be unforeseeable (and thus substantial) even for residential landlords. ER 73-75 (FAC ¶¶ 39-41); *see Apartment Ass'n of Los Angeles Cty., Inc.*, 500 F. Supp. 3d at 1096 (residential eviction moratorium's impairments "were, at least in terms of degree, unforeseeable"); *Baptiste*, 490 F. Supp. 3d at 384 ("[A] reasonable landlord would not have anticipated . . . a ban on even initiating eviction actions against tenants who do not pay rent . . . .").

### C. The County's moratorium is not reasonably related to fighting the pandemic and is not tempered by reasonable conditions protecting the basic contractual interests of commercial landlords

The government's substantial impairment of contract rights is permissible under the Contracts Clause only if the impairment is reasonably related to a

legitimate public interest. *Energy Reserves Group*, 459 U.S. at 411-12; *Apartment Ass'n of Los Angeles Cty.*, 10 F.4th at 913. Here, Iten does not dispute that stopping the spread of COVID-19 is a legitimate interest for which the County may regulate. ER 75-77 (FAC ¶¶ 42-48). But the County's commercial eviction moratorium is too far removed from the goal of fighting the pandemic to be considered "appropriate" or "reasonable," *Sveen*, 138 S. Ct. at 1822, much less "necessary," *Allied Structural Steel Co*, 438 U.S. at 247; ER 75-77 (FAC ¶¶ 42-48).

The principal aim of eviction moratoriums across the United States has been to keep individuals in their homes so as to prevent the virus from spreading. *See, e.g.*, ER 41 (Moratorium Amend.) (discussing County's Safer at Home Order. But augmenting at the expense of landlords the contract rights of commercial tenants is not closely tied to that purpose, ER 75-77 (FAC ¶¶ 42-48), because these orders by definition require individuals to remain in their homes, not their places of business, removing the need for the commercial side of the moratorium.

The County also argued that its moratorium was reasonably related to easing the economic hardship caused by its and other governments' efforts to combat COVID-19. ER 14-15 (Transcript). The County's argument amounts to a dubious form of constitutional bootstrapping; because one set of measures is necessary to respond to an emergency, another set of measures is in turn necessary to respond to the first set of measures, and so on. If the County were correct that the government's

own actions can justify laws that otherwise would be unconstitutional under the Contracts Clause, that Clause would be a dead letter. Moreover, even if the County's bootstrapping argument were valid, it would be of no avail here, because the moratorium is not reasonably related to remedying economic harm resulting from first-order COVID-19 measures. For example, the County's moratorium makes no distinction based on degrees of need, but instead treats all commercial landlords and tenants the same, regardless of whether they, as Iten's tenant, ER 76 (FAC ¶ 46), remained open during the pandemic as an "essential" business. ER 48-55 (Moratorium Amend. ¶ V.). The moratorium's forbearance period serves as yet another example of the moratorium's dramatic overbreadth. ER 54 (Moratorium Amend. ¶ V.C.2.a). For commercial lessees like Iten's tenant, the moratorium allows a back-rent forbearance period of one year. ER 54 (Moratorium Amend. ¶ V.C.2.a). Thus, even after the eviction moratorium has expired, such tenants have no obligation to pay anything they owe from the moratorium period for twelve additional months. ER 54 (Moratorium Amend. ¶ V.C.2.a). And with no threat of late fees or interest, tenants like Iten's have no rational economic reason to pay until the very end of the grace period. ER 48 (Moratorium Amend. ¶ V.A.1). Such a lengthy forbearance policy is hard to square with the goal of stemming the pandemic's spread given that, during this grace period, the County allows commercial tenants to be dispossessed of their leaseholds for nonpayment of post-

moratorium rent. This lack of fit between the moratorium's protections and commercial tenants' operational status or degree of financial need in turn suggests that the moratorium's forbearance provision is not really seeking to remedy a "broad and general social or economic problem" but rather to provide "a benefit to special interests." *Energy Reserves Group*, 459 U.S. at 412; *see Melendez*, 16 F.4th at 1042 ("[R]easonableness and appropriateness concerns are raised by a legislative decision to provide financial relief to certain persons not through public funds but by destroying the contract expectations of other persons, particularly persons not responsible for the circumstances warranting relief.").

Similarly overdrawn is the moratorium's elimination of the right to demand even partial monthly payments during the eviction moratorium period. ER 48-55 (Moratorium Amend. ¶ V.). It is one thing to permit commercial tenants to remain "housed" during the pandemic, but allowing them to evade entirely their lease payment obligations, when they cannot be evicted anyway, will hardly stem the virus's spread. If anything, such a policy may worsen the pandemic's effects by resulting in increased financial insecurity for landlords. *See, e.g.*, Kate Cimini, *Small California landlords left struggling when renters stop paying*, Cal Matters (Mar. 17, 2021)[9] (describing the experience of a Van Nuys residential landlord who is

---

[9] https://calmatters.org/california-divide/2021/03/small-landlords-left-struggling-when-renters-stop-paying/.

"potentially facing eviction while using his own savings to cover for tenants who still haven't caught up on rental payments").

Lastly, the County's moratorium is not subject to reasonable conditions, but rather reflects a "studied indifference," *W.B. Worthen Co. ex rel. Bd. of Comm'rs of Street Imp. Dist. No. 513 of Little Rock v. Kavanaugh*, 295 U.S. 56, 60 (1935), to the interests of commercial landlords. It bears repeating the fate of landlords like Iten under the moratorium: they cannot evict for nonpayment of rent during the moratorium period; they cannot force any payment from their tenants during the moratorium period; they can never assess late fees or interest on missed moratorium payments; and they cannot seek payment of their tenants' moratorium debt until many months—and in Iten's case a full year—following expiration of the moratorium. ER 48-55 (Moratorium Amend. ¶ V., VII.). In particular, the absence of any judicial process to obtain even a partial payment from an unwilling tenant during the moratorium period indicates that the County's moratorium, unlike the Minnesota extended redemption law upheld in *Blaisdell*, is unreasonable. *See Blaisdell*, 290 U.S. at 445 (The conditions of the extended redemption period "do not appear to be unreasonable" because, in part, the mortgagor "must pay the rental value of the premises as ascertained in judicial proceedings."); *Melendez*, 16 F.4th at 1045 ("[T]he reasonableness of the Guaranty Law as a means to serve the City's stated public purpose is also called into question by the law's failure to provide for

landlords or their principals to be compensated for damages or losses sustained as a result of their guaranties' impairment."). *Cf. Apartment Ass'n of Los Angeles Cnty.,* 10 F.4th at 915 ("That reasonable rent may have been a relevant consideration in some cases thus does not make it a constitutional floor in all cases.").[10]

### D. *Jacobson* deference is irrelevant to this action

The County contended in the district court that the constitutionality of its moratorium was bolstered by the principle of deference to emergency government action followed in the case of *Jacobson*, decided more than a century ago. ER 39 (Amend. MTD). The argument is without merit.

In *Jacobson*, the Supreme Court addressed a challenge to the constitutionality of Massachusetts' compulsory vaccination law. The plaintiff contended that the statute deprived him of liberty without due process of law—essentially, a substantive due process claim against a police power enactment. 197 U.S. at 24-26. The Court

---

[10] In *Apartment Association of Los Angeles County,* the Court rejected a Contracts Clause challenge to the City of Los Angeles's residential eviction moratorium. Key to the Court's reasoning was the close fit between fighting the pandemic and keeping people housed. *See Apartment Ass'n of Los Angeles Cnty.*, 10 F.4th at 914 ("The City fairly ties the moratorium to its stated goal of preventing displacement from homes, which the City reasonably explains can exacerbate the public health-related problems stemming from the COVID-19 pandemic."). As explained in the text, there is no such close fit with respect to a commercial eviction moratorium. Moreover, the Court's ruling is also distinguishable based on its procedural posture: the Court addressed the appellant's "entitlement to a preliminary injunction on which it bore the burden of demonstrating likely success on its Contracts Clause claim, not simply its plausibility, as necessary here to withstand dismissal." *Melendez*, 16 F.4th at 1040 n.70.

rejected the challenge, concluding that the vaccination law was not, "beyond question, in palpable conflict with the Constitution," nor did the law's methods lack a "real or substantial relation to the protection of the public health and the public safety." *Id.* at 31. In reaching that conclusion, the Court emphasized that, "under the pressure of great dangers," the government may restrict citizens' liberty through "reasonable regulations" to preserve "the safety of the general public." *Id.* at 29.

Contrary to the County's view, *Jacobson* does not establish a hyper-government-friendly rule that may be employed to defeat otherwise meritorious Contracts Clause claims that are raised during a public emergency. The *Jacobson* test is simply a poor fit for the Contracts Clause. Whereas the former only requires reasonableness, the latter demands a showing not just of reasonableness but also of necessity. *See Allied Structural Steel Co.*, 438 U.S. at 247 ("Yet there is no showing in the record before us that this severe disruption of contractual expectations was necessary to meet an important general social problem."). The necessity standard implies a heightened degree of means-ends fit. *See id.* at 242 (contractual impairments must be "tailored to the emergency that [is] designed to meet."). *See also U.S. Trust Co. of New York*, 431 U.S. at 31 (analyzing whether a "more moderate course would serve [the government's] purposes equally well."); *W.B. Worthen Co.*, 295 U.S. at 60 (striking down a law that substantially impaired contracts "without moderation"); *Blaisdell*, 290 U.S. at 445 (observing that

36

contractual impairments must "be of a character appropriate to that emergency"). In contrast, the rational-basis-like standard of *Jacobson* requires hardly any means-ends tailoring at all. *See, e.g.*, *Armour v. City of Indianapolis*, 566 U.S. 673, 685 (2012) (rational basis review does not require the government "to draw the perfect line" or "even to draw a line *superior to some other line it might have drawn*" but merely "*that the line actually* drawn be a rational line" (emphasis added)). Indeed, importing *Jacobson* into the Contracts Clause would be especially inapt given how modern-day Contracts Clause jurisprudence already has built into its three-pronged test a generous dose of deference to government decision-making. *See, e.g.*, *Apartment Ass'n of Los Angeles Cnty.*, 10 F.4th at 916 (noting the "considerable deference to state and local legislatures in assessing the reasonableness of legislation" under modern Contracts Clause jurisprudence).

In any event, the Supreme Court has rejected a view of *Jacobson* that would transform the case into a blanket authorization for the government to do whatever it wants during the COVID pandemic. In *Roman Catholic Diocese of Brooklyn v. Cuomo*, the Supreme Court enjoined, as a likely violation of the Free Exercise Clause, implementation of the Governor of New York's Executive Order imposing occupancy restrictions on houses of worship during the pandemic. 141 S. Ct. 63, 69 (2020). In arriving at that result, the Court did not even cite, much less discuss, *Jacobson. See id.* at 65-69. This lacuna spurred Justice Gorsuch, in a concurring

opinion, to observe that the Court's ruling had impliedly (and correctly) disavowed a super-deference interpretation of *Jacobson*. *Id.* at 70–72 (Gorsuch, J., concurring). *Accord id.* at 74 (Kavanaugh, J., concurring) ("[J]udicial deference in an emergency or a crisis does not mean wholesale judicial abdication . . . ."); *Agudath Israel of America v. Cuomo*, 983 F.3d 620, 635 (2d Cir. 2020) ("[W]e grant no special deference to the executive when the exercise of emergency powers infringes on constitutional rights."). Even Chief Justice Roberts, whose opinion in *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020), some lower courts have interpreted as adopting a super-deference view of *Jacobson*, *see Roman Catholic Diocese*, 141 S. Ct. at 71 (Gorsuch, J., concurring), rejected that understanding in *Roman Catholic Diocese. See id.* at 75-76 (Roberts, C.J., dissenting) (explaining that his citation of *Jacobson* in *South Bay* was merely for the "uncontroversial" proposition that the Constitution principally entrusts the task of protecting the public health and welfare to the politically responsible branches of government).

Finally, whatever extra deference the County may have been entitled to under *Jacobson*, that entitlement evaporated not long after the County enacted its moratorium. In *Heights Apartments, LLC v. Walz*, 30 F.4th 720 (8th Cir. 2022), a collection of residential landlords appealed the dismissal of various constitutional claims that they had pled against the Governor of Minnesota's eviction moratorium.

*See id*. at 723-24. In concluding that the landlords had adequately set forth claims for relief under the Contracts and Takings Clauses, the Eighth Circuit held that *Jacobson* deference is appropriate to resolve constitutional challenges seeking relief only for injuries sustained in "the early days of the pandemic," and that "modern tiers of scrutiny" are applicable to such claims seeking relief for injuries sustained "after the immediate public health crisis dissipated." *Id*. at 726-27. The decision suggests that the turning point for a shift in scrutiny is the Supreme Court's November 2020 ruling in *Roman Catholic Diocese*. *See id.* On that reasoning, the vast majority Iten's claim for damages sustained under his September 2020 lease should be exempt from *Jacobson* deference.

## CONCLUSION

The judgment of the district court dismissing Iten's action for lack of standing should be reversed, and that court directed to enter an order denying the County's motion to dismiss for failure to state a claim.

DATED: September 21, 2022.

Respectfully submitted,

LAWRENCE G. SALZMAN
DAMIEN M. SCHIFF
KATHRYN D. VALOIS

s/ Kathryn D. Valois
KATHRYN D. VALOIS

*Attorneys for Plaintiff – Appellant
Howard Iten*

39

## STATEMENT OF RELATED CASES

Plaintiff-Appellant is aware of no related cases within the meaning of Circuit

Rule 28–2.6.

**Form 8. Certificate of Compliance for Briefs**
**9th Cir. Case Number 22-55480**

I am the attorney or self-represented party.

**This brief contains 9,334 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X]          complies with the word limit of Cir. R. 32-1.

[ ]     is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ]     is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ]     complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

      [ ]  it is a joint brief submitted by separately represented parties;

      [ ]  a party or parties are filing a single brief in response to multiple briefs; or

      [ ]  a party or parties are filing a single brief in response to a longer joint brief.

[ ]     complies with the length limit designated by court order dated _____.

[ ]     is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Kathryn D. Valois         **Date** September 21, 2022
            KATHRYN D. VALOIS