No. 22-55480

_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

HOWARD ITEN,

Plaintiff-Appellant,

v.

COUNTY OF LOS ANGELES,

Defendant-Appellee.

_____

On Appeal from the United States District Court
for the Central District of California
Honorable Dean D. Pregerson, District Judge

_____

**APPELLANT'S REPLY BRIEF**

_____

LAWRENCE G. SALZMAN
DAMIEN M. SCHIFF
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
LSalzman@pacificlegal.org
DSchiff@pacificlegal.org

KATHRYN D. VALOIS
Pacific Legal Foundation
4440 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
Telephone: (561) 691-5000
KValois@pacificlegal.org

*Attorneys for Plaintiff – Appellant Howard Iten*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION .................................................................................1

ARGUMENT .........................................................................................6

  I.   Iten Is Injured by the County's Eviction Moratorium and
      Pled Sufficient Facts to Establish Standing....................................6

    A.  The Term "Extenuating Circumstances" Is Reasonably
       Interpreted to Grant Relief to Tenants Like Iten's.......................6

      1.  The County's litigation conduct ...........................................8

      2.  Lack of clarifying amendment............................................10

      3.  Judge Pregerson's invalidation of other parts of the
         moratorium as unconstitutionally vague in *Apartment
         Association of Los Angeles County* .......................................11

      4.  California's treatment of mistakes of law as valid excuses .................12

      5.  The moratorium's purpose .................................................13

    B.  Iten's Decision to Enter Into a New Lease Agreement with
       His Tenant Did Not Sever the Causal Connection Between
       His Injuries and the County's Moratorium ................................16

    C.  Iten Should Have Been Allowed an Opportunity to
       Propound Jurisdictional Discovery ...........................................18

  II.  Iten Adequately Pled a Claim for Relief under the Contracts Clause...........20

    A.  The County's Moratorium Substantially Impairs the
       Contract Rights of Commercial Landlords ................................20

    B.  The County's Moratorium Is Not Reasonably Related
       to Fighting the Pandemic, Nor Tempered by Reasonable Conditions........24

    C.  *Jacobson* Deference Is Irrelevant to a Contracts Clause Claim .................28

CONCLUSION....................................................................................29

CERTIFICATE OF COMPLIANCE....................................................30

# TABLE OF AUTHORITIES

## Cases

*Allied Structural Steel Co. v. Spannaus*,
  438 U.S. 234 (1978)........................................................................28

*Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles*,
  10 F.4th 905 (9th Cir. 2021) ............................................ 20, 24, 26-27

*Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles*,
  500 F. Supp. 3d 1088 (C.D. Cal. 2020)......................................20, 23

*Apartment Association of Los Angeles County, Inc. v.*
  *County of Los Angeles*, No. CV 22-02085,
  2022 WL 11237666 (C.D. Cal. Oct. 19, 2022) ....................... 2, 11-12

*Apartment Owners Advisory Council v. Marks*,
  No. 21-CV-10175, 2022 WL 4357951 (S.D.N.Y. Sept. 20, 2022)....................18

*Baptiste v. Kennealy*,
  490 F. Supp. 3d 353 (D. Mass. 2020)..................................... 20-21, 23

*Burden v. Snowden*,
  828 P.2d 672 (Cal. 1992) ......................................................................7

*CDK Global LLC v. Brnovich*,
  16 F.4th 1266 (9th Cir. 2021) ..............................................................26

*Clapper v. Amnesty International USA*,
  568 U.S. 398 (2013)............................................................................17

*Energy Reserves Group, Inc. v. Kan. Power & Light Co.*,
  459 U.S. 400 (1983)............................................................................24

*Eskeland v. City of Del Mar*,
  169 Cal. Rptr. 3d 112 (2014) ...............................................................9

*Fieldturf, Inc. v. Sw. Rec. Indus., Inc.*,
  357 F.3d 1266 (Fed. Cir. 2004) ..........................................................20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)..............................................................................9

*Goodman v. Lozano*,
223 P.3d 77 (Cal. 2010) ................................................................1, 13

*Halbert's Lumber, Inc. v. Lucky Stores, Inc.*,
6 Cal. App. 4th 1233 (1992) ...............................................................1

*Heights Apartments, LLC v. Walz*,
30 F.4th 720 (8th Cir. 2022) .......................................4, 6, 21, 25, 28

*Hipsher v. Los Angeles Cty. Employees Retirement Ass'n*,
272 Cal. Rptr. 3d 664 (2020) ..............................................................8

*Home Building & Loan Association v. Blaisdell*,
290 U.S. 398 (1934)............................................................................27

*Jacobson v. Massachusetts*,
197 U.S. 11 (1905).........................................................................6, 28

*Kelly v. Fleetwood Enterps., Inc.*,
377 F.3d 1034 (9th Cir. 2004) ...........................................................20

*Lazar v. Kroncke*,
862 F.3d 1186 (9th Cir. 2017) .............................................................4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014).............................................................................3

*Melendez v. City of New York*,
16 F.4th 992 (2d Cir. 2021) ...............................................22, 23, 25

*Monterossa v. Superior Court*,
188 Cal. Rptr. 3d 453 (2015) ..............................................................7

*Moustafa v. Bd. of Registered Nursing*,
240 Cal. Rptr. 3d 873 (2018) ..............................................................7

*Parkmerced Co. v. San Francisco Rent Stabilization & Arbitration Bd.*,
263 Cal. Rptr. 617 (1989) .................................................................14

*People ex rel. Green v. Grewal*,
352 P.3d 275 (2015)...........................................................................11

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
141 S. Ct. 63 (2020).........................................................................28

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ...........................................................10

*Schatz v. Allen Matkins Leck Gamble & Mallory LLP*,
198 P.3d 1109 (Cal. 2009) ...................................................................7

*State Farm Fire & Casualty Co. v. Pietak*,
109 Cal. Rptr. 2d 256 (2001) ............................................................13

*Sveen v. Melin*,
138 S. Ct. 1815 (2018) ......................................................................24

*Tower Lane Properties v. City of Los Angeles*,
168 Cal. Rptr. 3d 358 (2014) .........................................................1, 7

*Wolfe v. Strankman*,
392 F.3d 358 (9th Cir. 2004) ...............................................................8

## Statutes

Cal. Code Civ. Proc. § 1179.02(e), (h)(1)........................................ 25-26

## Other Authorities

86 Fed. Reg. 43,244 (Aug. 6, 2021)..............................................5, 26

Cal. Dep't of Real Estate, *Reference Book – A Real Estate Guide* (2010),
*available at* https://www.dre.ca.gov/publications/referencebook.html.............22

Cal. Judicial Council, Emergency Rule 1 (expired Sept. 1, 2020),
*available at* https://www.courts.ca.gov/documents/appendix-i.pdf..................17

Minutes of the Lawndale City Council Regular Meeting, April 6, 2020,
*available at* https://bit.ly/3FMyAJj .................................................21

# INTRODUCTION

## Standing

Whether Appellant Howard Iten (Iten) has standing to challenge the commercial eviction moratorium promulgated by Appellee County of Los Angeles (the County) turns on a straightforward question of legal interpretation: what is the meaning of the phrase "extenuating circumstances" as used in that moratorium?

Under California law,[1] the goal of interpreting local government enactments is to "ascertain and effectuate" the authoring authorities' intent. *Tower Lane Properties v. City of Los Angeles*, 168 Cal. Rptr. 3d 358, 362 (2014). To identify such intent, courts examine "the words of the ordinance itself" and, in cases where the language is unclear, "extrinsic aids," such as the history behind the ordinance. *Id.* at 268-69. If ambiguity still exists after examining the ordinance's history, courts must "apply reason, practicality, and common sense to the language at hand." *Halbert's Lumber, Inc. v. Lucky Stores, Inc.*, 6 Cal. App. 4th 1233, 1239 (1992). Ultimately, however, what the courts are searching for is "the most reasonable interpretation" of the text. *Goodman v. Lozano*, 223 P.3d 77, 80 (Cal. 2010).

In light of these interpretive standards, the moratorium's undefined term "extenuating circumstances" should be read as excusing a tenant's failure to provide

---

[1] The County does not appear to dispute that California interpretive principles should govern the construction of its moratorium.

1

monthly notice of the inability to pay where, as here, (a) the tenant stated a qualifying inability to pay both before and shortly after the lease was executed, ER-70–71 (Am. & Suppl. Compl. (FAC) ¶¶ 23, 29), (b) the tenant acted consistent with that inability by failing to keep current on money owed under the lease, ER-71 (FAC ¶ 28), and (c) the tenant invoked the moratorium's protections, while again reaffirming the inability to pay, when asked whether he could establish "extenuating circumstances," ER-71 (FAC ¶ 30). In other words, the exception should apply to tenants like Iten's who evidently operated under the assumption that a qualifying inability to pay, once asserted, should be presumed to persist until the landlord is apprised otherwise.

Contrary to the County's view, Appellee's Br. 23-34, Iten's construction of "extenuating circumstances" represents "the most reasonable interpretation" of the moratorium because, among other reasons, it is consistent with: (1) the County's litigation conduct throughout this case, including its failure to enact a clarifying amendment after having been put on notice of Iten's interpretation, despite the County's having repeatedly enacted amendments with respect to other parts of the moratorium, (2) Judge Pregerson's subsequent ruling, in *Apartment Association of Los Angeles County, Inc. v. County of Los Angeles*, No. CV 22-02085, 2022 WL 11237666 (C.D. Cal. Oct. 19, 2022), that parts of the County's moratorium were unconstitutionally vague, (3) California's general treatment of mistakes of law as

2

valid excuses, exemplified by California Code of Civil Procedure section 473, and (4) the County's purpose underlying the moratorium's "extenuating circumstances" exception, as well as its tenant harassment provisions—namely, to provide the maximum protection *for tenants*, not landlords.

Iten's standing to challenge the moratorium is not defeated simply because Iten chose, in August 2020, to negotiate a new lease with his tenant. *Cf.* Appellee's Br. 34-37. Whatever harm Iten might have avoided by not doing so does not change the fact that the cause of Iten's contractual impairments is the County itself, not Iten or his tenant. Put another way, (i) the County's moratorium is undoubtedly a but-for cause of the Article III injuries for which he seeks redress,[2] and (ii) the County's moratorium is the *sole* cause of the contractual impairments that form the basis of Iten's cause of action.

Finally, to the extent that the meaning of "extenuating circumstances" is at least in part a question of fact, Iten should have been allowed to seek jurisdictional discovery to establish standing. The County quibbles about Iten's failure to request below an opportunity to seek such discovery. Appellee's Br. 55-57. But the County in its papers declined to contest Iten's standing, ER-38–39, and so Iten had no reason

---

[2] The causation component of standing requires nothing more. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct.").

to defend the jurisdictional adequacy of his pleading until the hearing, when the district court *sua sponte* raised standing, *see* ER-13–19. And as the dismissal order makes clear, the district court viewed the standing issue as entirely a question of law. *See* ER-6–7, 10–11. Hence, a request for jurisdictional discovery would have been futile. The County protests that it has no evidence that would avail Iten; yet even if the County doesn't have relevant records, the Los Angeles County Superior Court surely would. In any event, the district court's dismissal with prejudice was improper because even the district court itself conceded that new facts could establish Iten's standing. *See* ER-12 n.6.

### The Contracts Clause

To prevail fully on this appeal, Iten must show that his operative pleading adequately alleges that the County's moratorium substantially impaired his lease contract, and that the moratorium-caused impairments were neither reasonably related to the County's valid COVID-pertinent purposes, nor tempered by reasonable conditions. *See Heights Apartments, LLC v. Walz*, 30 F.4th 720, 731-32 (8th Cir. 2022). *Cf. Lazar v. Kroncke*, 862 F.3d 1186, 1199 (9th Cir. 2017). Iten has made that showing; the County's arguments to the contrary, Appellee's Br. 41-55, are without merit.

First, the County's moratorium substantially impairs Iten's contract by, among other things, eliminating the central guarantee to any lease contract—a

reliable and regular stream of rental income—as well as the central mechanism to enforce any lease contract—eviction. These are significant contractual impingements that no landlord, much less any commercial landlord, could have reasonably foreseen. Iten's decision to create a new lease agreement with his tenant does not alter that conclusion because the lease contract was negotiated by the parties and agreed to by Iten's tenant prior to the County's decision to apply the moratorium to incorporated municipalities like the City of Lawndale, where Iten's property is located. *See* ER-69–70 (FAC ¶¶ 20, 24-25).

Second, the moratorium's impairment of commercial lease contracts is not reasonably related to any legitimate COVID purpose, nor is it tempered by reasonable conditions. The principal purpose of eviction moratoriums across the country has been to keep individuals in their homes to slow the spread of the virus. *See, e.g.*, ER-41–42 (County moratorium); 86 Fed. Reg. 43,244, 43,247 (Aug. 6, 2021) (CDC moratorium). But the commercial portion of the County's eviction moratorium is not closely related to that purpose, for it keeps tenants in their places of business not their residences. Moreover, even if limiting economic harm from first-order COVID regulation could justify rampant contract impairment, the County's moratorium would still be unconstitutional. For one, it makes no distinction based on degrees of need, but instead treats commercial tenants the same regardless of the extent to which COVID has affected their businesses. *See, e.g.*, ER-

54 (tenants like Iten's receive a year-long forbearance period following expiration of the eviction moratorium in which to pay back rent, regardless of their "essential" status). Moreover, the moratorium makes no attempt to balance commercial tenant economic protection with landlords' interests, for it denies landlords the right to demand even a partial income stream during the eviction moratorium itself. *See id*.

Third, judicial deference to the moratorium under *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), is unwarranted because *Jacobson* does not apply to Contracts Clause claims. Even if it did so apply, such deference would pertain only to claims, unlike Iten's, that were advanced in the early stages of the COVID-19 pandemic. *See Heights Apartments*, 30 F.4th at 727.

## ARGUMENT

### I. Iten Is Injured by the County's Eviction Moratorium and Pled Sufficient Facts to Establish Standing

Iten has standing to pursue his Contracts Clause claim because his operative pleading adequately alleges that the County's moratorium abrogated his contract rights and remedies. *See* ER-73–77 (FAC ¶¶ 39-47).

### A. The Term "Extenuating Circumstances" Is Reasonably Interpreted to Grant Relief to Tenants Like Iten's

The standing issue in this case boils down to one of textual interpretation: what does the moratorium's undefined term "extenuating circumstances" mean? Because California's rules of statutory construction apply equally to statewide

legislative action and municipal ordinances, *Tower Lane Properties*, 168 Cal. Rptr. 3d at 361, the interpretive endeavor here is governed by the "fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent." *Id.* at 362 (quoting *Burden v. Snowden*, 828 P.2d 672, 676 (Cal. 1992)). That task requires courts to examine, in succession, (1) the words of the ordinance itself, (2) the language in the context of the regulatory framework as a whole, keeping in mind the nature and purpose of the ordinance in which the language appears, and, if the language is still unclear, (3) extrinsic aids. *Id.* at 268-69. Such aids include "the ostensible objects to be achieved, the evils to be remedied, the legislative history, [and] public policy," *Moustafa v. Bd. of Registered Nursing*, 240 Cal. Rptr. 3d 873, 879 (2018) (quoting *Monterossa v. Superior Court*, 188 Cal. Rptr. 3d 453, 456 (2015)), and, in "cases of uncertain meaning, . . . the consequences of a particular interpretation," *Schatz v. Allen Matkins Leck Gamble & Mallory LLP*, 198 P.3d 1109, 1118 (Cal. 2009).

All of these considerations point to Iten's interpretation—that "extenuating circumstances" include those where a tenant repeatedly informs the landlord of the inability to pay for a qualifying reason and for the foreseeable future, ER-70–71 (FAC ¶¶ 23, 29-30), and thereby operates under the assumption that the landlord is on continuing notice of the tenant's inability to pay until notified otherwise—as the

best understanding of the County's enacting intent.[3] *See* Appellant's Opening Br. 17-24. *Cf. Hipsher v. Los Angeles Cty. Employees Retirement Ass'n*, 272 Cal. Rptr. 3d 664, 686 (2020) (when construing broad language capable of multiple meanings, courts must "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute"). As explained below, the County's contrary arguments are without merit.

### 1. The County's litigation conduct

The County asserts that Iten lacks standing to litigate his Contracts Clause claim because his tenant did not follow the proper notification procedures required by the moratorium. Appellee's Br. 17, 22-23. But the County's argument simply side-steps the critical issue, because the County chose *to waive* the notice requirement if "extenuating circumstances" exist to excuse the failure to provide monthly notice. *See* ER-48. And with respect to that critical issue, the County's litigation conduct is illuminating. After prevailing on standing as against the original

---

[3] The County asserts that Iten's tenant failed "to even read or analyze the applicable law," and that Iten never provided his tenant a copy of the moratorium. Appellee's Br. 26-27, 29. But there are no such facts in the record. *See* ER-71 (FAC ¶ 30) (tenant asserting that the "laws and regulations and notices" that Iten's property management company had referred to in its inquiry to the tenant about extenuating circumstances "give me relie[f]"). *Cf. Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (on a facial motion to dismiss, a court must "assume [the complaint's] allegations to be true and draw all reasonable inferences in [the plaintiff's] favor").

complaint, the County pointedly declined to contest the sufficiency of the amended pleading's standing allegations. *Compare* ER-39 (County's second MTD) *with* ER-88–90 (County's first MTD). That decision is significant given that the County, as the author of the moratorium, is uniquely positioned to know and articulate the meaning of "extenuating circumstances." *See Eskeland v. City of Del Mar*, 169 Cal. Rptr. 3d 112, 121-22 (2014) (local's government construction of its own code entitled to "great respect by the courts").[4]

The County downplays its litigation conduct, contending that it simply made a strategic decision to argue the merits of Iten's case rather than standing, and that this decision does not represent a concession as to the meaning of "extenuating circumstances." Appellee's Br. 32-34. But as the County surely knows, a federal court cannot address the merits if the plaintiff lacks standing, and indeed the court has an obligation to satisfy itself as to standing before proceeding to the merits. *E.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). Derivatively, then, the County was obligated to reassert its by then familiar standing objection to the amended pleading, if it thought that it was meritorious. Presumably it chose not to do so precisely because it had concluded that the facts as alleged therein stated a plausible claim for "extenuating circumstances." That is after

---

[4] The County suggests that deference to local government interpretations is limited to administrative findings. Appellee's Br. 33-34. That is incorrect. *See Eskeland*, 169 Cal. Rptr. 3d at 121-22 (deferring to a city's construction of its own municipal code).

all what the County's attorney effectively stated at the hearing—the reason why the County did not renew its standing objection is that it would mean "going beyond the complaint," ER-16, *i.e.*, converting the County's facial dismissal motion into a factual attack. *See generally Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (a facial attack on jurisdiction takes the pleading's allegations as true, whereas "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction").

## 2. Lack of clarifying amendment

The interpretive argument based on the County's litigation conduct is strengthened by the County's *legislative* conduct during the same period. Iten initiated this action in January 2021. *See* ER-126. The district court dismissed the action with prejudice in April 2022. *See* ER-130. In those intervening fifteen months the County regularly amended the moratorium, variously providing clarification of some terms and expanding or restricting certain protections, *see* RJN00003-00004; indeed, the County amended the moratorium twice just between the filing of its renewed motion to dismiss (which contained no standing objection) and the December hearing on the same (at which the district court raised standing *sua sponte*). *See* RJN00063-00064, RJN00078-00081. Yet as the County's voluminous

request for judicial notice reveals,[5] *not once* in all these meetings did the County propose adding a definition of "extenuating circumstances" or otherwise clarifying that term, even though doing so would have definitively resolved the standing dispute. This absence of clarifying legislative action, placed against the backdrop of near monthly moratorium amendments, is also at least some further evidence that a broad understanding of extenuating circumstances, as advanced by Iten, is consistent with the County's original enacting intent. *Cf. People ex rel. Green v. Grewal*, 352 P.3d 275, 288-89 (2015) (observing that inaction can constitute legislative acquiescence in a particular statutory interpretation).

### 3. Judge Pregerson's invalidation of other parts of the moratorium as unconstitutionally vague in *Apartment Association of Los Angeles County*

Further supporting Iten's interpretation of "extenuating circumstances" and thus his standing to challenge the County's moratorium is Judge Pregerson's conclusion in another lawsuit that the County's moratorium, as then drafted, was likely unconstitutionally vague. *See Apartment Ass'n of Los Angeles Cty., Inc.*, 2022 WL 11237666, at *4. Specifically, Judge Pregerson held that the moratorium's tenant protections, and the resulting affirmative defense that they provide to an

---

[5] As explained in his response to the County's motion for judicial notice, Iten does not object to the Court's taking judicial notice of the fact that the County's proffered documents exist and accurately reflect their contents. Doc. No. 28, at 2. Iten's citation of those documents in this brief is limited to that purpose.

unlawful detainer action, were not simply "difficult to suss out"; their opacity made it "*impossible* for a landlord to determine whether [the provisions] might apply in any particular instance." *Id*. at *2-*3 (emphasis added). Such nebulous tenant protections, when coupled with the moratorium's command that landlords "must accept" tenants' representations as to certain elements of the tenants' affirmative defense against eviction, left landlords having to "run the risk of initiating an unlawful detainer" action to determine whether a tenant's affirmative defense is valid. *Id*. at *3-*4. Given the moratorium's significant penalties for landlords who guess wrong, that risk was constitutionally intolerable. *See id*.

This recent decision, although not specifically addressed to the moratorium's "extenuating circumstances" exception, nonetheless informs the present case as it supports Iten's contention that the County *wanted* to have a broadly worded, and thus broadly tenant-protective, moratorium—a goal that would be served by reading "extenuating circumstances" in the manner that Iten has proposed.

### 4. California's treatment of mistakes of law as valid excuses

The County contends that Iten's tenant could not qualify for relief under California Code of Civil Procedure section 473. Appellee's Br. 28-31. The County misperceives the point. The relevance of section 473 is not that it provides a standard for applying the moratorium's "extenuating circumstances" provision. Rather, section 473 is relevant because it evidences California's generous indulgence of

12

mistakes of law in analogous contexts. *See* Appellant's Opening Br. 18-20. Such a backdrop for the County's enactment of the "extenuating circumstances" exception in turn supports Iten's view that his tenant's flexible understanding of the moratorium's notice requirement was reasonable. *Cf. Goodman*, 223 P.3d at 80 (statutes are interpreted as against their "legislative history and background").

The County attempts to contest Iten's characterization of this jurisprudential background for its moratorium by noting that, even in California, ignorance of the law is no defense. Appellee's Br. 29-30. But the County again misses the point. Here, it is not a question of whether the tenant erred because he labored under a "general ignorance of the law or lack of knowledge of the rules." Appellee's Br. 29 (quoting *State Farm Fire & Casualty Co. v. Pietak*, 109 Cal. Rptr. 2d 256, 263 (2001)). Just the opposite: both he and Iten knew all of the rules. *See* ER-71 (FAC ¶ 30). Instead, the pertinent question is whether the tenant's *understanding* of those rules to excuse, in his case, the failure to provide monthly notice, falls within the meaning of "extenuating circumstances." Here, the answer is "yes."

### 5. The moratorium's purpose

Finally, the County argues that the moratorium's notice provision is meant to protect landlords, not tenants. Appellee's Br. 31-32. True but irrelevant: what matters here is not the meaning or purpose of that notice requirement, but instead the meaning of "extenuating circumstances," which is an express exception to the

notice requirement and thus, by its nature, is meant—like the moratorium generally—to protect *tenants* not landlords. If this purpose is to be served, a broad interpretation of extenuating circumstances is demanded; anything less would undercut the very protections the moratorium promised. *Cf. Parkmerced Co. v. San Francisco Rent Stabilization & Arbitration Bd.*, 263 Cal. Rptr. 617, 621 (1989) ("It is well settled that remedial legislation, such as the rent control ordinance at issue, must be liberally construed to effect its purposes.").

Indeed, one need look no further than the moratorium's tenant harassment protections to prove that the moratorium was meant, even in close cases, to favor tenants, not their landlords. Under those provisions, landlords face up to $5,000 per day in penalties as well as a criminal misdemeanor conviction if they harass their tenants. ER-55–58 (Moratorium ¶¶ VIII-X). Harassment is broadly defined to include legal action "to recover possession of a rental unit based upon facts which the Landlord has no reasonable cause to believe to be true or upon a legal theory which is untenable under the facts known to the Landlord." ER-56 (Moratorium ¶ VIII.I.).[6] According to this provision, a landlord like Iten would still be liable for

---

[6] Following Judge Pregerson's ruling in *Apartment Association of Los Angeles County*, the County amended the moratorium's tenant harassment provisions to provide landlords a safe harbor if "the Landlord has a reasonable belief . . . that the Tenant cannot carry the burden to prove the affirmative defense provided by this Resolution." RJN00304. *See* RJN00288. Even assuming this amendment to be retroactive, it provides no comfort to landlords like Iten, for whom the question was

harassment even if he had a good-faith belief that certain types of mistakes of law would not qualify as "extenuating circumstances"; so long as the landlord, like Iten, knew all of the *facts*, then he is guilty of harassment.[7] Hence, as the moratorium's harassment prohibition proves, the County wanted to put all of the risk on landlords, not tenants, to determine the scope of the moratorium's protections—indeed, there is no penalty to any tenant for having unsuccessfully invoked the moratorium.

A second indicator of the moratorium's radical pro-tenant orientation is how the moratorium applies within the County—namely, whether incorporated cities have their own moratoriums that are, as compared to the County's moratorium, at least as protective *of tenants*. *See* ER-48 (Moratorium ¶ IV.B.2.). Presumably, if the moratorium were really about balancing landlord and tenant interests, as the County suggests, then whether it should apply to jurisdictions within the County should turn on both sides' interests and not, as it actually does, only the tenant side.

The foregoing harassment and applicability provisions therefore confirm that the moratorium is designed to protect tenants, not landlords, and thus any construction of its less-than-clear provisions should err on the side of tenants'

---

never the *facts* that might make up their tenants' potential defenses but rather the *legal sufficiency* of those facts.

[7] That would not be the case if, for example, the moratorium's "reasonable cause" excuse also applied to the "legal theory" upon which the landlord's eviction proceeding was based. But as explained in the text, the litigation harassment provision only gives a landlord an out based on his factual, not legal, determinations.

interests. This is just one more reason why Iten's tenant-friendly construction of "extenuating circumstances" is the correct one.

### B. Iten's Decision to Enter Into a New Lease Agreement with His Tenant Did Not Sever the Causal Connection Between His Injuries and the County's Moratorium

In its brief on appeal, the County argues for the first time that Iten's decision to enter into a new lease agreement with his tenant materially contributed to his injury and thus excuses any liability it might have incurred toward Iten. Appellee's Br. 34-37. The County's argument is without merit.

First, the injury for which Iten seeks redress is the harm caused by the contractual impairments—such as the inability to evict his defaulting tenant and immediately to seek to recover back rent—that the County's moratorium precipitated. ER-71–72 (FAC ¶¶ 27, 32). Put another way, the reason why Iten is injured is because he couldn't evict his tenant or otherwise seek relief against him. And the reason for those *legal* disabilities has nothing to do with Iten's tenant or Iten's contract, but rather has everything to do with the County's moratorium. Second, even if Iten's injury might in other circumstances be justifiably pegged on Iten's decision to enter into a new lease agreement with his tenant, that consequence should not obtain here where the decision to create a new lease was essentially forced upon Iten. At the time that the old lease was expiring and the new lease was being negotiated, the California Judicial Council had in effect a statewide moratorium on

for both residential and commercial unlawful detainer actions. *See* Cal. Judicial Council, Emergency Rule 1(a).[8] Thus, even if Iten had wanted to get out of a contractual relationship with his tenant, other causes independent of Iten forced his hand.

The County's authorities are inapposite. The County relies principally on *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), for the proposition that individuals cannot manufacture standing for themselves by self-inflicted injury. In *Clapper*, the Supreme Court examined whether the Foreign Intelligence Surveillance Act of 1978 permitted the Attorney General and Director of National Intelligence to acquire foreign intelligence by surveilling non-citizens. *Id*. at 402-06. The plaintiffs, human rights attorneys and other interested organizations, brought suit alleging that the Act would result in the government's interception of their confidential communications with non-citizens. *Id.* at 401-06. The Court ruled that the plaintiffs lacked standing because they could only speculate about potential future surveillance; there was no certainly impending surveillance and thus no imminent injury. *Id.* at 410-11. For that reason, the plaintiffs could not use their actual costs expended in anticipation of any such speculative surveillance to confer standing. *Id*. at 415-16. Here, however, there is nothing speculative or future-oriented about Iten's

---

[8] *Available at* https://www.courts.ca.gov/documents/appendix-i.pdf. Emergency Rule 1 expired on September 1, 2020. *See* Emergency Rule 1(e).

injuries. Rather, it is a legal *certainty* that, if the extenuating circumstances exception applies, then the County's moratorium applies to Iten's tenant and precluded Iten, as a matter of law, from evicting his tenant or otherwise seeking redress for the tenant's defaults.

Similarly distinguishable is *Apartment Owners Advisory Council v. Marks*, No. 21-CV-10175, 2022 WL 4357951 (S.D.N.Y. Sept. 20, 2022), on which the County also relies. In *Marks*, the plaintiff apartment owners sued the state courts of New York over pandemic-motivated tenant protections. *Id.* at *1. With respect to the individual plaintiffs in the suit (those most similarly situated to Iten), the district court concluded that several lacked standing because their alleged present injuries were, as in *Clapper*, based on speculative future events. *Id.* at *5-*6. But just as *Clapper* was distinguishable, so too is *Marks*: Iten's injuries are not based on speculation but rather the current *reality* that, if his tenant can invoke the "extenuating circumstances" exception based on the facts alleged in the operative pleading, then he is protected and Iten's contract rights and remedies are thereby impaired.

## C. Iten Should Have Been Allowed an Opportunity to Propound Jurisdictional Discovery

To the extent that the meaning of "extenuating circumstances" is a mixed question of law and fact, Iten should have been given an opportunity to seek

jurisdictional discovery to establish his standing to sue. *See* Appellant's Opening Br. 25-26.

The County says no, principally because Iten did not request such discovery below. Appellee's Br. 55-57. The County's objection is unfair; after all, it was the County's failure to contest Iten's standing in its motion to dismiss Iten's amended pleading that resulted in Iten's decision not to brief the issue at all. Although Iten could have made a request for discovery at the hearing on the County's renewed motion to dismiss, such a request would have been futile, given that the district court viewed the standing issue here to be of a purely legal nature. *See* ER-6–7, 10–11. The County for its part also argues its own version of futility, contending that it has no records that would be helpful to Iten. But the County is not the only repository of relevant records; for example, a document subpoena to the clerk of the Los Angeles County Superior Court could reveal whether tenants similarly situated to Iten's have successfully invoked the "extenuating circumstances" exception.

Finally, the County argues that dismissal with prejudice was correct because no amendment could cure Iten's pleadings. Appellee's Br. 19. But the County's characterization is belied by the district court's refusal to take a position on whether Iten's tenant might "be able to show, in some other proceeding, that extenuating circumstances prevented him from providing Plaintiff with timely notice." ER-12 n.6. That refusal necessarily implies that such jurisdictional facts may develop, the

pleading of which the district court's dismissal with prejudice improperly precludes. *See Kelly v. Fleetwood Enterps., Inc.*, 377 F.3d 1034, 1036 (9th Cir. 2004) ("[B]ecause the district court lacked subject matter jurisdiction, the claims should have been dismissed without prejudice."). *Cf. Fieldturf, Inc. v. Sw. Rec. Indus., Inc.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004) (jurisdictional dismissal with prejudice generally appropriate only where "it is plainly unlikely that the plaintiff will be able to cure the standing problem") (cleaned up).

## II.    Iten Adequately Pled a Claim for Relief under the Contracts Clause

Because Iten has standing to challenge the County's eviction moratorium, and because the merits were fully briefed below and here, this Court can and should decide whether his amended pleading adequately alleges a violation of the Contracts Clause.

### A. The County's Moratorium Substantially Impairs the Contract Rights of Commercial Landlords

Eviction moratoriums like the County's substantially impair lease contracts by, among other things, depriving landlords of their right to a monthly stream of income as well as their right to exclude. *See Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles*, 500 F. Supp. 3d 1088, 1096 (C.D. Cal. 2020) (landlords were likely to establish substantial impairment because "some landlords may face, at the very least, the prospects of reduced cash flow and time value of missed rent payments"), *aff'd on other grounds*, 10 F.4th 905 (9th Cir. 2021); *Baptiste v.*

*Kennealy*, 490 F. Supp. 3d 353, 383 (D. Mass. 2020) (a residential eviction moratorium "materially undermines the contractual bargain" in part because "landlords are unlikely to benefit from money judgments against tenants who are unable to pay rent"); *Heights Apartments*, 30 F.4th at 729 (being "precluded . . . from exercising [the] right to exclude others and regain possession . . . . plausibly plead[s] that [the eviction moratorium] substantially impaired [the] contractual bargain with its tenants"). *See also* ER-73–75 (FAC ¶¶ 39-41).

The County's primary argument as to why its moratorium does not substantially impair Iten's contract rights is that the moratorium predates Iten's lease agreement. Appellee's Br. 45-51. But that argument is based on the false premise that the moratorium applied to Iten's property from the outset. Although enacted in March 2020, at that time the moratorium applied only to the unincorporated parts of the County. *See* RJN00015. Over the next several months, the County debated whether to expand the moratorium's reach, *see* RJN00032-00034, yet it was not until September 2020 that the County applied the moratorium to incorporated cities, like Lawndale, that had moratoriums in place but which were not as protective of tenants as the County's,[9] *see* RJN00046-00047, RJN00052; *see also* ER-69 (FAC ¶ 20). *Cf.*

---

[9] The City of Lawndale enacted its own residential and commercial eviction moratorium in April 2020. *See* Minutes of the Lawndale City Council Regular Meeting, April 6, 2020, at 2-3, *available at* https://bit.ly/3FMyAJj. That moratorium, however, never applied to Iten because Iten's tenant never provided documentary

RJN00026 (May 2020 motion to expand the moratorium to incorporated cities that lacked any residential or commercial eviction moratorium). By that point in time, however, the new lease had already been negotiated, with the tenant acceding thereto and continuing in undisturbed possession of the premises. *See* ER-70 (FAC ¶¶ 24-25). Thus, the County's "all laws are incorporated" argument against substantial impairment is neither here nor there.

The County also contends that substantial impairment is not possible because, given the history of landlord-tenant regulation, all landlords should have been on notice of the possible enactment of impairing laws like the moratorium. Appellee's Br. 49-50. The County's argument improperly elides the distinction between commercial and residential tenancies: although the latter may have a long history of significant governmental regulation, the former do not. *See, e.g.*, Cal. Dep't of Real Estate, *Reference Book – A Real Estate Guide* 134-35, 138 (2010)[10] (observing how the law governing security deposits, the landlord's right to enter the premises, and the landlord's obligation to keep the premises in tenantable condition, is less onerous for commercial than residential leases). *Cf. Melendez v. City of New York*, 16 F.4th 992, 1032, 1034 (2d Cir. 2021) (substantial impairment of commercial lease

---

proof of his inability to pay, as required by the Lawndale ordinance. ER-69 (FAC ¶ 20).

[10] *Available at* https://www.dre.ca.gov/publications/referencebook.html.

contracts not defeated simply because a state "has sometimes, and to varying degrees, regulated its commercial real estate market"). And even if that were not so, the degree to which the County's moratorium impairs any lease contract is so substantial as to be unforeseeable for any landlord. *See Apartment Ass'n of Los Angeles Cty., Inc.*, 500 F. Supp. 3d at 1096 (residential eviction moratorium's impairments "were, at least in terms of degree, unforeseeable"); *Baptiste*, 490 F. Supp. 3d at 384 ("[A] reasonable landlord would not have anticipated . . . a ban on even initiating eviction actions against tenants who do not pay rent . . . ."). *See also* ER-74–75 (FAC ¶¶ 40–41).

Finally, the County contends that the moratorium cannot substantially impair any lease contracts because it was "temporary." Appellee's Br. 49-50. But during the moratorium's heyday, there was very little temporary about it: although each instantiation of the moratorium resolution contained an ostensible end-date, inevitably once that end-date approached, the County would vote to extend it further. *See* RJN00002-00004. Moreover, a mere "temporary" delay, in the world of debt collection, may well turn into a permanent loss, especially where, as here, the debtors are "tenants who are unable to pay rent during the COVID-19 pandemic or who are unwilling to do so." *Baptiste*, 490 F. Supp. 3d at 383. And even the County begrudgingly concedes that aspects of its moratorium that Iten challenges, such as

the prohibition on late fees and interest, "might be a permanent bar." Appellee's Br. 49 n.8.

### B. The County's Moratorium Is Not Reasonably Related to Fighting the Pandemic, Nor Tempered by Reasonable Conditions

If, as Iten contends, the moratorium's impairment of his lease contract is substantial, then the moratorium's constitutionality turns on whether that impairment is reasonably related to a legitimate public interest, and is tempered by reasonable landlord-favoring conditions. *See Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411-12 (1983); *Apartment Ass'n of Los Angeles Cty.*, 10 F.4th at 913. Stopping the spread of COVID-19 is a legitimate interest that the County make seek to further through regulation. *See* ER-75 (FAC ¶ 42). But the County's moratorium is too far removed from the goal of fighting the pandemic to be considered "appropriate" or "reasonable," *Sveen v. Melin*, 138 S. Ct. 1815, 1822 (2018). *See* ER-75–77 (FAC ¶¶ 42-48).

As noted above, the principal aim of eviction moratoriums across the nation has been to keep individuals in their homes and thereby to prevent COVID-19 from spreading. *See, e.g.*, ER-41 (discussing the County's Safer at Home Order). And as the County correctly observes, Appellee's Br. 51-52, numerous courts have held that residential eviction moratoriums are reasonably related to that goal. *See, e.g.*, *Apartment Ass'n of Los Angeles Cty.*, 10 F.4th at 914. But now, nearly three years into the pandemic, it is telling that no court (other than the district court below) has

upheld a *commercial* eviction moratorium. Indeed, the most on-point precedent goes precisely the other way. *See Melendez*, 16 F.4th at 1032-47 (holding that plaintiffs had adequately pled that a pandemic-motivated New York City ordinance rendering commercial lease guarantee clauses unenforceable violated the Contracts Clause). *Cf. Heights Apartments*, 30 F.4th at 727-31 (holding that plaintiffs had adequately pled that Minnesota's residential eviction moratorium violated the Contracts Clause).[11]

Greater judicial skepticism of COVID-inspired regulation of commercial as opposed to residential leases is merited because the fate of an evicted commercial tenant is at least one step removed from the standard justification for COVID eviction moratoriums—keeping people in their homes. ER-75 (FAC ¶ 43). The County parries that it *had* to enact a commercial moratorium to further protect the public health and the local economy. Appellee's Br. 54-55. Yet the County's contention is belied by the fact that many jurisdictions that imposed a residential eviction moratorium saw fit not to enact a commercial eviction ban. *See, e.g.*, Cal.

---

[11] The County attempts to distinguish *Heights Apartments* based on differences between the moratorium at issue there and the County's moratorium. Appellee's Br. 52-53. But *Heights Apartments* dealt with a *residential* moratorium, and thus the fact that the County's commercial moratorium may not be as burdensome on landlords as the *Heights Apartments* moratorium does not distinguish the Eighth Circuit's ruling, given that, as explained in the text, a commercial moratorium is necessarily less closely related to COVID-pertinent governmental interests than a residential moratorium, and hence should require a less substantial showing to establish its unconstitutionality under the Contracts Clause.

Code Civ. Proc. § 1179.02(e), (h)(1) (exempting commercial tenancies from state COVID eviction moratorium); 86 Fed. Reg. at 43,245 (CDC eviction moratorium applying only to residential property).

Contrary to the County's view, *see* Appellee's Br. 54-55, that the moratorium contains findings as to its necessity cannot be determinative of its constitutionality, otherwise compliance with the Contracts Clause would become a pro forma exercise of legislative drafting. To be sure, this Court in *Apartment Association* did cite the City of Los Angeles's findings to uphold the City's residential eviction moratorium. *Apartment Ass'n of Los Angeles Cty.*, 10 F.4th at 914. But the Court did not simply accept those findings at face value; instead, they were cited to support *the Court's independent conclusion* that the moratorium was "reasonably" related to protecting public health. *See id*. Similarly, in *CDK Global LLC v. Brnovich*, 16 F.4th 1266 (9th Cir. 2021), another Contracts Clause case which was decided just a few months after *Apartment Association*, the Court acknowledged that it should defer to legislative judgments about reasonableness and necessity; but that acknowledgment didn't preclude the Court from proceeding to review the factual record to determine whether those judgments were adequately supported. *See id.* at 1280-81.

Finally, the County contends that the moratorium is appropriately tailored to meet the economic challenges of commercial tenants, Appellee's Br. 54-55, but that assertion cannot be reconciled with the moratorium's plain overbreadth. For one, the

moratorium makes no distinction based on degrees of need, giving the same generous treatment to "essential businesses" like Iten's tenant who were allowed to remain open, as it does to, for example, restaurant tenants who by and large were not. Appellant's Opening Br. 32. The same is true of the moratorium's forbearance period, which gives a full interest-and-late-fee-free year to tenants like Iten's to pay back rent—*even after* the eviction moratorium itself has expired and thus such tenants can be "turned out" to face the very COVID threats that arise from dispossession and that supposedly undergirded the moratorium in the first place. Appellant's Opening Br. 32-33. And as for reasonable conditions, the fact that the moratorium provides commercial landlords with *no* income stream—a particularly salient lacuna given that residential landlords have been eligible for a variety of assistance programs, *see Apartment Ass'n of Los Angeles Cty.*, 10 F.4th at 916, unlike commercial landlords, *see* ER-76 (FAC ¶ 45)—confirms the lack of constitutional fit between the County's COVID policies and the contract-impairing means it has chosen to further those policies. Appellant's Opening Br. 34-35.[12]

---

[12] The County contends that this Court in *Apartment Association* rejected Iten's interpretation of *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398 (1934). Not so. The landlords in *Apartment Association* argued that the absence of any guaranteed income stream to landlords during the eviction moratorium period *necessarily* rendered a moratorium unconstitutional, 10 F.4th at 915, a proposition which this Court rejected, *id.* at 915-16. In contrast, Iten contends that the County's failure to provide such a guarantee is a relevant, but not determinative, knock against a moratorium's constitutionality.

### C. *Jacobson* Deference Is Irrelevant to a Contracts Clause Claim

The County supports its Contracts Clause argument by relying on *Jacobson* deference. Appellee's Br. 41-45. Although *Jacobson* did address a virus outbreak, *Jacobson*, 197 U.S. at 39, the similarities between that case and this one end there. For starters, the plaintiff in *Jacobson* brought a substantive due process claim, not a Contracts Clause claim. Further, the analytical rationale of *Jacobson* doesn't map to Contracts Clause claims: *Jacobson* requires just reasonableness, whereas modern Contracts Clause jurisprudence requires reasonableness *and* necessity. *See Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 247 (1978) ("Yet there is no showing in the record before us that this severe disruption of contractual expectations was necessary to meet an important general social problem."). That added requirement in turn suggests a degree of means-ends review more demanding than what would be required in substantive due process cases like *Jacobson*.

These distinctions, coupled with the fact that neither the Supreme Court nor any federal appellate court has adopted the County's view of *Jacobson* as applying to the Contracts Clause, demonstrate that *Jacobson* is inapposite. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70-72 (2020) (Gorsuch, J., concurring).[13]

---

[13] The best authority the County can muster is *Heights Apartments*, but even that decision acknowledges that *Jacobson*'s relevance evanesced by the end of 2020, *see* 30 F.4th at 727, before Iten had even commenced this action.

28

## CONCLUSION

Iten has standing to challenge the moratorium because his tenant meets the "extenuating circumstances" exception to the County moratorium's notice provision. However, if this Court disagrees, Iten should be allowed to seek jurisdictional discovery to establish standing. On the merits, Iten has adequately pled a Contracts Clause claim because the County's eviction moratorium substantially impairs Iten's lease contract, yet the moratorium is not reasonably related to any legitimate COVID-pertinent interest, nor is it tempered by reasonable conditions.

Thus, the judgment of the district court on standing should be reversed, and that court directed to enter a new order denying the County's motion to dismiss for failure to state a claim.

DATED: December 9, 2022.

Respectfully submitted,

LAWRENCE G. SALZMAN
DAMIEN M. SCHIFF
KATHRYN D. VALOIS

s/ Kathryn D. Valois
KATHRYN D. VALOIS

*Attorneys for Plaintiff – Appellant*
*Howard Iten*

## Form 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS
### 9th Cir. Case Number 22-55480

I am the attorney or self-represented party.

**This brief contains 6,905 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X]   complies with the word limit of Cir. R. 32-1.

[ ]   is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ]   is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ]   complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ]   it is a joint brief submitted by separately represented parties;

    [ ]   a party or parties are filing a single brief in response to multiple briefs; or

    [ ]   a party or parties are filing a single brief in response to a longer joint brief.

[ ]   complies with the length limit designated by court order dated _____.

[ ]   is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Kathryn D. Valois      **Date** December 9, 2022
       KATHRYN D. VALOIS